214    258
35 SC  336

# Joseph P. Murphy Company's Assigned Estate.

*Factors—Advances—Contract—Debt—Assignment for creditors.*

Where a factor makes advances to his principal for goods consigned, the only agreement implied by law in the transaction is that the consignor will repay to the consignee any balance due on the advances, if it appears, that, after a sale of the consigned goods, and upon an account stated, the proceeds are insufficient to repay the advances. Until the factor, if he keeps the goods consigned to him, has performed the whole of his contract by selling them, and accounting to his principal, there is no default by the latter, and, therefore, no debt or liability to the former. If in such a case the consignor makes an assignment for the benefit of creditors, the claim of the consignee against the assigned estate is limited to the difference between the amount of the advances and the proceeds of the goods sold. He cannot claim for the whole amount of the advances on the theory that the advances are a debt, for which he holds the goods as collateral security. In such a case the rule of allowing no interest in insolvent estates properly applies.

Argued Jan. 4, 1906. Appeal, No. 134, Jan. T., 1905, by Frederick Vietor & Achelis from order of C. P. No. 1, Phila. Co., Sept. T., 1898, No. 408, dismissing exceptions to auditor's report in Assigned Estate of Joseph P. Murphy Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of Ira J. Williams, Esq., auditor.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Charles H. Edmunds*, with him *Harris S. Sparhawk* and *John Sparhawk, Jr.*, for appellants.—As Vietor & Achelis were

creditors of the assigned estate at the time of the assignment and held collateral security for the same, they were undoubtedly entitled to prove their claim in the sum then standing to their credit and have the dividend computed upon it: Patten's App., 45 Pa. 151; Miller's App., 35 Pa. 481; Graeff's App., 79 Pa. 146; Boyer's App., 163 Pa. 143.

Interest should have been allowed: Patten's App., 45 Pa. 151; Shultz's App., 11 S. & R. 182; Est. of Bank of Penna., 60 Pa. 471.

*Frank P. Prichard*, for appellees.—When the case is the ordinary one of principal and factor and the moneys paid to the principal by the factor are advances there is no personal debt on which suit can be brought until there has been a settlement of account. The factor may sell the goods and the proceeds may be more or less than the advances, in which case one or the other party becomes a creditor for the balance. Or the factor may, after reasonable efforts, fail to sell the goods, in which case he may terminate the agency, render an account and become a creditor for the balance due him on offering to return the goods. Or the relation may be terminated in any other way, requiring a settlement of accounts and making one party or the other a creditor for the balance found. Interest is, by the custom of merchants, allowed on both sides of the account and was so charged in the present case: Frothingham v. Everton, 12 N. H. 239.

OPINION BY MR. JUSTICE BROWN, March 5, 1906:

In a well considered report, confirmed by the court below, the auditor who made distribution of the balance in the hands of the assignee of the Joseph P. Murphy Company, an insolvent corporation, found that the relationship existing between it and the appellants at the date of the assignment was not that of debtor and creditor, but of principal and factor. They were accordingly awarded a dividend only on $20,054.67—the balance found to be due them after they had received upon sales made subsequently to the assignment the proceeds of the goods consigned to them. They claimed a dividend on $120,807.49, the entire amount of advances due them at the date of the assignment, including interest, provided, of course, that the

dividend should not exceed the balance really due them. This claim was made upon the theory that at the date of the assignment they were general creditors of the assignor, holding as security for indebtedness due them the goods that had been consigned to them by the insolvent company. If this was the real situation, their contention was proper, and the dividend claimed ought to have been allowed them: Morris v. Olwine, 22 Pa. 441; Patten's Appeal, 45 Pa. 151; Miller's Estate, 82 Pa. 113; Boyer's Appeal, 163 Pa. 143.

The testimony of Frederick Vietor, one of the appellants, shows just what the relationship was between his firm and the Joseph P. Murphy Company, and, in the light of it, the auditor could have reached no other conclusion than that they were factors, the agents of the consignor, employed by it to sell its goods consigned to them for sale for a compensation commonly called factorage or commission. After stating that his firm was engaged in the dry goods commission business, he said: "The arrangement with Mr. Murphy was that he was to consign us goods, upon which we would give him 66 2/3% to 70% advances, and we were to hold the goods as collateral as against such advances." The goods consigned to them were undoubtedly to be held as collateral security for the repayment of the advances made to their consignor, but not for an indebtedness created by the latter, which the consignees could have called upon it to pay on demand or at any specified time. The appellants, under a proper agreement with the consignor, might have become its creditors for the amount of each advance from the time it was made, and acquired the right to hold the goods as collateral security for the indebtedness; but there was no such agreement. The undertaking of the appellants, engaged in the business of selling on commission, was to sell the goods of the consignor for profit to themselves in the regular course of their business, accounting to consignor for the proceeds; and, as an incident to this undertaking and an inducement to the consignor to so have its goods sold, they agreed to make advances on the proceeds which were to be paid to them and out of which they were to repay themselves. The agreement on their part to advance was not one carrying with it an obligation on the part of the consignor to repay as its primary debt, whenever called upon to do so,

the sum or sums advanced. The implied obligation of the consignor was to pay whatever sum, if any, should be found due on the advances made to it after its goods had been sold by the consignees and an account stated between them, fixing the measure of its liability. From all that appears in this case, the contract was the ordinary one between principal and factor, in which there is no implied agreement that advances, made under a belief by the factor that he is fully protected by the goods consigned for sale, shall be repaid by the principal before the goods are sold. The only agreement implied by the law in such a case is that the consignor will repay to the consignee any balance due on the advances, if it appears, after a sale of the consigned goods and upon an account stated, that the proceeds are insufficient to repay what has been advanced. Until the factor, if he keeps the goods consigned to him, has performed the whole of his contract by selling them and accounting to his principal, there is no default by the latter, and, therefore, no liability to the former. The factor undertakes to look primarily to the goods consigned to him for the moneys not loaned, but advanced on anticipated sales, and the liability of the principal is limited to the difference between the amount advanced and the proceeds of the sale of his goods sold by his consignee. For this amount, and this amount only, after it had been definitely ascertained by an account stated, could the appellants have brought suit against the assignor, if it had not made an assignment for the benefit of creditors, and for such an amount only can they ask for a dividend from its assigned estate. The holder of an absolute obligation for indebtedness, even if secured by collaterals, stands on a very different footing. He may call for his money at once, for the primary obligation of the debtor is to pay the whole amount due, without regard to securities he may have given his creditor for its payment. The amount of his liability is what he owes, and until that is paid it is the basis of the creditor's claim wherever presented or pressed. It is for this reason that a creditor of an assigned estate may present against it the whole amount of his debt unpaid at the time of the assignment, without regard to any collateral security he may have in his hands. So a factor may present the whole amount of his unpaid claim, but as it cannot be more than the difference between the ad-

vances and the amount realized, or that he ought to realize from the assets in his hands, and to which he must primarily look for payment, he cannot present it for more. In expressing the foregoing views we have not considered the insolvent Act of June 4, 1901, P. L. 404, as the rights and liabilities of the parties in this controversy were fixed before the passage of that act.

Our attention has not been directed to any of our own cases upon the question raised on this appeal, but our disposition of it has the sanction of reason and is sustained by the weight of decisions by the courts of other states. To what is said in several of them attention may be called as correct expressions of the law.

The rights of a factor and the liability of a principal are clearly set forth in Frothingham v. Everton, 12 N. H. 239, as appears from the following extract: "The two sums, which furnish the foundation of the plaintiffs' action, appear, by the case, to have been moneys advanced by the plaintiffs as commission merchants, or factors, upon a consignment of the wool, the proceeds of the sale of which form the item of credit in the plaintiffs' account. No particular agreement is stated to have been made, respecting the repayment of these sums, when they were advanced by the plaintiffs; and it may be taken, therefore, that it was then in the contemplation of both parties, that the plaintiffs were to be reimbursed out of a sale of the goods upon which the advances were made, if sufficient should be realized—that a credit was given to the defendant until a sale should be made, or until a reasonable time had elapsed in which the plaintiffs might endeavor to make a sale; and that the plaintiffs could not, immediately upon furnishing the money, have commenced a suit against the defendant for its recovery. But the plaintiffs' claim to reimbursement did not depend entirely upon the goods consigned, there being no special contract to that effect. In case of loss by fire, or otherwise, without the fault of the plaintiffs, they might have recovered the whole amount of the advances, of the defendant; and if they had not been limited in the price, and had sold in the regular course of their duty as factors, for less than the amount of the advances, they might well have recovered the balance of the advances in this suit. And notwithstanding they were limited in the price,

if the defendant had refused, upon application, after a reasonable time, to repay the advances, the plaintiffs might have sold them at the fair market price, although below the limit, and have recovered the balance." In Gihon v. Stanton, 9 N. Y. 476, it is said: "It would seem, from an examination of the long series of cases on this subject, that hardly anyone had ever thought of contending that a factor or commission merchant, who, for the sake of inducing consignments to himself, makes advances to the consignor upon the faith of the goods consigned, and in anticipation of their avails, could, without rendering any account of the disposition of the goods, or of their proceeds, turn immediately around and sue for and recover back the amount of his advances. The question has arisen, whether advances of this kind are not made prima facie upon · the exclusive credit of the property consigned; and whether the factor could without some special agreement to that effect resort to the personal resonsibility of the principal at all, even for a deficiency. . . . From these cases it is strongly to be implied that the factor or commission merchant must first have recourse for reimbursement to the fund in his hands before resorting to his principal. That the credit, where a commission merchant makes advances upon consignments to him, is given primarily to the fund to be derived from the sale of the property consigned, would seem to result from the very nature of the transaction. The object of the consignor is not to borrow money, but to realize in advance some portion of the avails of his property. That of the consignee is not to make a loan of money for the accommodation of the consignor, or for the sake of the interest, but to increase the profits of his business, which depends upon the amount of consignments he can secure. He frequently knows little or nothing of the personal responsibility of the consignor, and must of course rely upon the property as his security. The lien which the law gives him for his advances upon the goods consigned from the moment of their shipment, and which it protects by the most stringent rules, affords of itself some evidence that he is regarded as having made the advance primarily upon the credit of the goods. . . . Again, the commercial language universally applied to such a transaction goes to refute the ground taken by the plaintiffs. It is called an advance. An advance is something which precedes;

and of course there is something to follow. As applied to the payment of money, the term implies that the parties look forward to a time when the money will be due to the recipient. A debtor who voluntarily pays his debt before it is due is said to advance it. Can he recover it back? An advance by a factor is a transaction somewhat similar. It is a prepayment; a mere anticipation of the avails of the goods consigned; and no more creates a debt in the first instance, than an advancement of a father to his son, in anticipation of his expected inheritance, creates a debt. It is true, that if the property proves insufficient to reimburse the factor for his advances, the law, in the absence of any agreement to the contrary, implies an undertaking to make up the deficiency."

It was held in Balderston v. National Rubber Co., 18 R. I. 338, that where the consignor makes an assignment for the benefit of creditors, the factor cannot have a dividend on the whole amount of his advances existing at the time of the assignment, but only on such part thereof as he shall be unable to realize from the consigned goods in his hands, and what was said in a well-considered opinion of the facts in that case applies to those in this: "It is not reasonable to suppose that the parties to the agreement before us contemplated that the advances made in pursuance thereof should constitute a present indebtedness on the part of the consignors, for which an action might at once be maintained. What are 'advances?' They are moneys paid by the factor to his principal, on the credit of the goods consigned, and in anticipation of the debt which will become due to the principal upon the sale of such goods. The ordinary use of the term indicates moneys paid before, or in advance of, the proper time of payment. To 'advance' is to 'supply beforehand'; 'to loan before the work is done or the goods are made.'" After referring to Gihon v. Stanton, and the rule there announced, the opinion proceeds: "That the law as thus stated is well founded in reason, and, indeed, well-nigh indispensable to the successful prosecution of manufacturing and commercial enterprises, is evident from the results which might follow from the adoption of the rule contended for by the plaintiffs; for, if an advance by a factor has the effect of creating a present indebtedness against the consignor, the latter is liable at any moment to be called upon to repay the

amount advanced, and, failing so to do, to render his property liable to be attached, and his whole business stopped, if not destroyed, while, at the same time, the goods which have been probably produced in part by virtue of the advances, are in the hands of the factor, and, presumably, entirely sufficient to compensate him for all his advances. . . . Moreover, we may add that, so far as we are aware, the custom and understanding among merchants and factors in this state are in harmony with the views which we have herein expressed regarding advances. It is clear, therefore, that in no event can the plaintiffs claim a dividend from the assignee upon the whole amount of the advances made by them and unpaid from the proceeds of goods sold at the time of said assignment. But, as before intimated, we think the better doctrine is, that where advances are made upon the faith of the goods consigned, and especially under an agreement like the one before us, the proceeds are to be deemed as the primary fund to which the factor must look for reimbursement, and that it must be made to appear that this fund is insufficient before he can recover his advances from the consignor."

As the claim of the appellants was the difference between the advances made by them and the value of the consigned goods in their possession at the date of the assignment, the rule of allowing no interest in insolvent estates was properly applied. The assignments of error are all overruled and the decree is affirmed at the cost of appellants.