[L. A. No. 3789.   Department Two.—November 9, 1916.]

## BURTON ‘B. CRANE, Respondent, v. CHARLES STANS-BURY et al., Appellants.

ATTORNEY AND CLIENT—ACTION FOR FEES—INTEREST—PLEADING.— Where the complaint in an action to recover attorney's fees charged in several counts upon an account stated, upon an express contract, and upon a *quantum meruit,* interest on the principal sum sued for is properly included in the verdict for the plaintiff, where the evidence was sufficient to sustain the verdict either upon the count of an account stated or upon the count of an express contract.

ID.—EXPRESS CONTRACT FOR SERVICES—ACCOUNT STATED.—Where the transactions between an attorney and client covered a period of years, and there were disbursements made by the attorney on behalf of the client, and receipts of money from the client which were matters of adjustment, the bill of the attorney was a proper subject for an account stated, notwithstanding the services of the attorney were rendered under an express contract.

ID.—ACQUIESCENCE—FAILURE TO OBJECT TO ACCOUNT—UNREASONABLE DELAY—QUESTION OF LAW—INSTRUCTIONS.—Where assent to an account is based upon acquiescence arising from a failure to object, the length of time which must pass before an account rendered becomes, by virtue of the recipient's failure to object, an account stated, is one of law for the court. In this case, the court properly instructed the jury that a delay of six months to object to the account rendered, if unsatisfactorily explained, was unreasonable as matter of law, and that because of it acquiescence would be presumed and the account would become an account stated.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Thomas O. Toland, Lewis W. Andrews, and Andrews, Toland & Andrews, for Appellants.

Ward Chapman, E. B. Drake, and John E. Biby, for Respondent.

HENSHAW, J.—This action was brought to recover attorney's fees for services rendered to defendants by Oscar A. Trippet, plaintiff's assignor. The complaint charged in

several counts and sought a recovery for $2,160.40, with
interest from the eleventh day of July, 1911. One count
charged upon an account stated, another upon an express
contract, a third in *quantum meruit.* Trial was had before
a jury which rendered its verdict in a sum totaling the
amount sued for with interest. From the judgment and
order refusing them a new trial defendants appeal.

It is made to appear that in 1904 the city of Los Angeles
let a contract to one Edwards for the construction of an out-
fall sewer from the city to the Pacific Ocean many miles dis-
tant. The contract price exceeded half a million dollars. As
security for its performance Edwards was required to give
and gave a bond in the sum of two hundred and eighty-two
thousand five hundred dollars. He immediately assigned his
contract to Stansbury and Powell, who assumed its obliga-
tions and undertook the work. In 1906 they encountered
difficulties and ceased work, leaving a large part uncompleted.
This abandonment of the contract at once raised serious and
difficult questions. The city, in August, 1906, served notice
of the rescission of the contract and of its intention to com-
plete the work itself. The city did proceed with the work
and completed it in November, 1907. Immediately upon the
abandonment, and in contemplation of the legal questions
which had arisen, and the legal actions which might arise,
defendants consulted their attorney, Mr. McCutcheon. He
in turn suggested the employment of Mr. Trippet to assist
him in the consideration of the legal questions, to advise with
him as to the course of action to be pursued, and to aid in
the prosecution or defense of any actions which might be
necessary. Some of the legal propositions thus requiring con-
sideration went to the legality and validity of the contract
between the city and the contractors, the justification of the
contractors for their abandonment upon the ground of the
impracticability of construction by reason of defective or im-
possible specifications, the right of the city to complete the
contract when the contractors were insisting that the city
should modify its specifications and permit them to do it, the
liability of defendants' sureties upon their undertaking and
the defendants' liability over. The investigation of these
matters necessitated great research in the law, and this was
very largely done by Mr. Trippet. Actions were instituted,
demurrers interposed and argued. The preparation of the

litigation for trial it has been sufficiently made to appear rested in comparatively small degree upon the testimony of witnesses. Nine-tenths of the work of this preparation, as one of the attorneys testified, was professional work on legal questions. A very large part of this work Mr. Trippet personally performed. Indeed, there is no conflicting testimony against plaintiff's evidence that the value of Mr. Trippet's services was at least two thousand five hundred dollars. This two thousand five hundred dollars, less certain small payments made by defendants, was the amount sued for under these different counts.

The testimony of Mr. Trippet was to the effect that after Mr. McCutcheon's death defendants sought to employ him to take sole charge of these matters. He expressed an unwillingness to do so, but consented to join as counsel with some other reputable attorney or firm of attorneys. Defendant then employed the firm of O'Melveny, Millikin & Stevens. Millikin and Stevens of this firm took personal charge of the matter. Their testimony goes to the continued services of Mr. Trippet and the value of those services throughout the litigation. Messrs. Millikin and Stevens sought a compromise of the controversy and took charge of these negotiations. A compromise was effected. Thereafter, on July 11th, Mr. Trippet presented his account and bill to both Stansbury and Powell. This account contained some ten or twelve items charged against defendants, payments to other people on account of fees and other matters, and two specific items, one for five hundred dollars retainer fee, and the other for two thousand dollars, the balance of the fee of two thousand five hundred dollars agreed by defendants to be paid. Upon the credit side of this account appeared certain items of cash paid by defendants to Mr. Trippet, some of which covered disbursements made by him, the rest of which was receipted for as on account of his fee, leaving a balance, as has been said, of $2,160.40. This account was unquestionably rendered and received by defendants at the time it bears date. Their own admissions establish this fact. Thereafter, in September, 1911, having heard no word from them, he sent them another statement "of balance due on account as per statement rendered," and he received no response to this. Again in December, 1911, he addressed to them a letter stating that in July he had presented to them his account and had received

no remittance, "the balance due is $2,160.40, and I wish you would remit all or a part of it at once." On February 8, 1912, he wrote them another letter to like effect, therein stating that they had paid no attention to any of his letters or statements, and that he therefore requested their immediate attention to it. Following this, upon February 17, 1912, a reply came from these defendants to this effect: "You surely have forgotten that some time before a compromise was talked of in the outfall sewer matter you voluntarily withdrew from the case and accepted what you had already received as compensation in full and agreed with us that no further demand for attorney's fees would be made on us." In this letter is outlined the defense to this action. The jury, with the evidence before it of the character and volume of labor which Mr. Trippet had performed, of the value of that labor fixed by disinterested attorneys in varying sums from five to ten thousand dollars, having before it also the testimony of Mr. Trippet's associates that they were never advised of his withdrawal and never understood that he had withdrawn, and Mr. Trippet's own testimony that he had not withdrawn, and finally confronted with the improbability that an attorney would render services of such value, covering so long a period of time, and then without reason and after the work had been done, withdraw from the employment after having received but a paltry three hundred and fifty dollars, most naturally decided in favor of plaintiff's contention.

The main defense having thus been disposed of by the jury, appellants fall back upon certain minor contentions, most of which do not merit notice, some of which call for passing consideration. Thus the principal sum sued for, as has been said, was $2,160.40. The jury's award was for $2,441.85. This, by mathematical calculation is found to include interest upon the principal sum. It is said that the demand was not a liquidated demand, that one of the counts charged in *quantum meruit*, that the value of the services were thus to be determined, and that an allowance of interest was therefore improper. Of course, all this presupposes a failure to establish either the count charging upon an account stated, or the count charging upon an express contract. In the former of these cases, if the account stated were established, interest would of course follow the principal sum. In the second count upon an express contract it is not to be denied that if

that count were established, the $2,160.40 became due and payable when the controversies were settled by a compromise, and that from that date this sum would bear interest.

The evidence was amply sufficient to sustain the verdict either upon the count of an account stated or upon the count of an express contract. We have heretofore sufficiently indicated the evidence supporting the latter of these counts, Mr. Trippet himself testifying to the express contract under which his minimum fee was to be two thousand five hundred dollars, and to be a larger sum than that in certain contingencies. So far as concerns the account stated, appellants are in error in their position that the fees of an attorney under the circumstances here shown, even where the contract is found to be an express contract, may not be the subject matter of an account rendered and stated. True it is that in the generality of cases where the contract is a specific contract for the express payment of a named sum, where, in short, it is a specialty, the mere rendering of a statement of an amount due, even when acquiescence or consent is shown to the correctness of the statement, will not justify an action brought upon an account stated and thus set aside the specialty contract. A typical case of this is *Jaspar Trust Co.* v. *Lampkin,* 162 Ala. 388, [136 Am. St. Rep. 33, 24 L. R. A. (N. S.) 1237, 50 South. 337]. There the defendant being bound by his promissory notes, the holder of the notes calculated the principal and interest due and the maker consented to the correctness of the amount, and the court, holding that the specific contract was not superseded, declared: "The promisor is as firmly bound to pay the amount which is definitely fixed by the court as he could be by an implied promise, also there is no account for them to settle together. Each one with his pencil can ascertain at any moment just what is due, and the mere affirmation of what they both know and are already bound to cannot form a new contract." But such is not the case here presented. True, by this action plaintiff seeks to recover only for the value of legal services, and it may be conceded that the sum to be paid, under the testimony of Mr. Trippet, was fixed by special contract. Nevertheless, the transactions between the attorney and his clients, as is shown, covered a period of years. There were disbursements made by Mr. Trippet on behalf of his clients; there were receipts of moneys from those clients. It was a matter of ad-

justment—the correctness of the disbursements and the amount and application of the moneys received by Mr. Trippet from his clients. There was in a very real sense an open account, subject to adjustment and settlement. And finally, if it be said that there was no express contract for the payment of a fee, but that Mr. Trippet was entitled to recover only under the count in *quantum meruit,* nevertheless the amount of his recovery under this count became fixed when the account became a stated account and bore interest from that date. The bill of an attorney for services, like any other bill, may under proper circumstances and conditions be the subject of an account stated. (*Lane & Bodly Co.* v. *Taylor,* 80 Ark. 469, [7 L. R. A. (N. S.) 924, 97 S. W. 441]; *Case* v. *Hodgkiss,* 3 Keys (*42 N. Y.), 334; *Gruby* v. *Smith,* 13 Ill. App. 43.)

The court instructed the jury that when an account was rendered it became the duty of the recipient to make his objections thereto within a reasonable time, and that, if he did not do so, the account became an account stated and the foundation of an independent cause of action based upon the account stated; also that silence and nonobjection under the circumstances of this case for six months would constitute an unreasonable time. Exception is taken to these instructions. But the complaints made against them are not well founded. They are unimpeachable in point of law. Defendants were not denied the opportunity to explain their silence. Their explanation has been outlined. It was that they paid no attention to this account, that they thought it was rendered through a bookkeeper's error, and that they relied upon the parol agreement which they had had with Mr. Trippet, whereunder he had withdrawn from the case, accepting what he had received as full compensation for his services. All that need be said upon this proposition is that it is established by the verdict of the jury that it was not believed. All that is left, then, to the case, is that the account was rendered in July, that the defendants were repeatedly reminded of it and took no action upon it, and not until Mr. Trippet's demand took on a peremptory tone did they pay any attention to it. While all questions of fraud and mistake in combating the force of an account stated are questions of fact for the jury, where assent is based upon acquiescence arising from a failure to object, the length of time which must pass before an

account rendered becomes, by virtue of the recipient's failure to object, an account stated, is one of law for the court. There is here no controversy over the date of the reception of the account, the determination of which controversy would be a matter for the jury; nor yet over the date when defendants first objected to it, which also would be a matter for the jury; nor finally over the defendants' explanation of its delay, which likewise is a matter for the jury. What the court told the jury in effect was that this delay of six months, if unsatisfactorily explained, was as matter of law unreasonable, and that because of it acquiescence would be presumed and the account would become an account stated. Such we repeat is the law. (*Cusick* v. *Boyne,* 1 Cal. App. 643, [82 Pac. 985]; *Hendy* v. *March,* 75 Cal. 567, [17 Pac. 702]; *Standard Oil Co.* v. *Van Etten,* 107 U. S. 325, [27 L. Ed. 319, 1 Sup. Ct. Rep. 178]; *Fleischner* v. *Kubli,* 20 Or. 328, [25 Pac. 1086]; *Wiggins* v. *Burkham,* 77 U. S. (10 Wall.) 129, [19 L. Ed. 884].)

Numerous other objections are made. They have all been considered. For the most part they revolve around the legal principles which we have considered and passed on and they do not merit specific notice. Certain others are unfairly presented. To illustrate: Testimony was being taken of attorneys Mr. Millikin, Mr. Morton, and Mr. Pruitt. The examination threatened to become unduly prolonged. The following then took place: The court said: "We are taking up a lot of time. If you want me to testify, I will testify that Mr. Millikin, Mr. Morton and Mr. Pruitt, the only ones I have seen, are prominent lawyers here; that they have had a great deal of business of different kinds, and that they are leading lawyers of the bar. Shall I be sworn, or will you consider that I have so testified?" Appellants in their brief complain of this as an error and irregularity which prevented them from having a fair trial. Just how or why is not shown. Presumptively it could only have been because the court made this statement not under oath. Yet appellants omit to point out that in answer to the question of the court their attorney declared: "I will consider that the witness would so testify if on the stand." Again complaint is made because the court instructed the jury that but one payment of two hundred and fifty dollars had been made to Mr. Trippet, for which payment credit was given in his account. Yet

by the very admissions of the answer, and by the testimony of the defendants themselves, no pretense is made that there was ever more than one payment of two hundred and fifty dollars made to Mr. Trippet.

These are exemplars of numerous frivolous complaints made by appellants. It would serve no profitable purpose to consider them all.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.