[Civ. No. 2528. First Appellate District.—October 3, 1918.]

## GEORGE W. SCHNEIDER, Respondent, v. OAKMAN CONSOLIDATED MINING COMPANY (a Corporation), Appellant.

OPEN BOOK ACCOUNT—ACCOUNT STATED—EVIDENCE.—In an action by the assignee of the manager of a corporation against the corporation, upon an open book account and upon an account stated, books kept by the assignor himself, in which the entries, with the exception of two or three items, were made contemporaneously with the transactions, and in which the items were correctly entered, were properly admitted in evidence, although there seemed to have been some inconsistencies in such books.

CONTRACT—CONTINUANCE IN EMPLOYMENT—PRESUMPTION AS TO SALARY.—Where a person, hired at a fixed salary, continues in the said employment without any new contract, the presumption is that the continued employment is at the same salary.

ACCOUNT STATED—FAILURE TO MAKE TIMELY OBJECTIONS.—An account rendered to a debtor becomes an account stated and the foundation for an independent cause of action thereon, when, after the lapse of a reasonable time, no objection has been made thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge.

The facts are stated in the opinion of the court.

Theodore L. Breslauer, for Appellant.

Costello & Costello and H. L. Corson, for Respondent.

BEASLY, J., *pro tem.*—This is an appeal by defendant from a judgment for plaintiff upon an assigned claim of one Frank Dillon. The defendant is a mining corporation, with its principal place of business in Massachusetts. On December 19, 1907, the defendant acquired a group of mines in Nevada County, California, from F. H. Oakman. On September 29, 1909, Dillon was elected mine manager, and from the 22d of November of that year he served as vice-president of the company. On or about the third day of June, 1911, his salary was fixed at $150 per month, to continue to the first day of January, 1912. He was paid this salary in full to that date. He continued in the service of the company until the first day of August, 1914, without any new arrangement being made as to salary. It is claimed by the defendant that during the year 1913 he either performed no services, or that his services were materially different from those performed by him as manager during the period between his employment and the first day of January, 1913; but an examination of the evidence shows that he was busy about the affairs of the company during that time except during a short period when he was absent on a vacation. While the mine was apparently not in operation, he kept it in condition to show to prospective purchasers, did the assessment work on the claims, and otherwise employed his time pretty fully about the mine. He did not charge the full price for his services during this period, however, but of this it seems to us the defendant has no right to complain. Schneider, upon the assignment of the claim to him, brought this action upon two counts, the first of which is for $4,219.49 upon an open book account, alleged to have accrued within four years before January 17, 1916, the date of filing the complaint, and the second upon an account alleged to have been stated between the parties on or about August 1, 1914, and, except as hereafter stated, the claim was composed of work done by Dillon as mine manager for the company. Dillon kept books, and one of the chief grounds upon which the appellant urges that this case should be reversed is that these books should not have been admitted in evidence because of the irregularities of Dillon's bookkeeping. It is true that there seem to be some inconsistencies in the books. Many such are pointed out by counsel, but from the evidence it appears that Dillon kept these books himself; that the entries, except of two or three items, were made practically contemporaneously

with the transactions and on the dates that appear on the face
of the books; that the items were correctly entered thereon,
and it must be held that this was sufficient to justify their
admission.

It is contended that they should not have been admitted
because the salary of Dillon was entered up at $150 per month
instead of an entry being made of the separate items of work
that he did during the month, but as he was working at a
salary of $150 per month there seems. to be nothing in this
point.

It is contended that there was no contract for salary beyond
the first day of January, 1913, but it does not appear that there
was any other contract for salary except the agreement for
the specific period above mentioned ending on the last-named
day,—at least we are directed by counsel to no other agree-
ment for salary. The rule of law in such cases is that where
a person, hired at a fixed salary, continues in the same em-
ployment without any new contract the presumption is that
the continued employment is at the same salary. (*Nicholson*
v. *Patchin,* 5 Cal. 475.) The books were, therefore, admis-
sible in evidence.

It is contended that these books do not prove the truth of
the items therein contained. Conceding this to be true, the
record contains much evidence by Dillon himself as to the
verity of these items, and we think that the evidence amply
sustains the findings of the court upon all questions as to the
amount of salary due Dillon.

The defendant objects to a certain item of $468 dated on
the books as of August, 1914. This item was a claim by Dillon
against another company, known as the Sunshine Company,
which was assumed by defendant by a resolution adopted
October 27, 1914. This, we think, is a sufficient admission,
taken with the other evidence on this point, that the company
did assume to pay this item, and, therefore, as Dillon was
making up a set of books for the purpose of closing his entire
account with the defendant, the item was properly included
in his books.

A one thousand five hundred dollar item due Dillon on the
original contract under which the mine was purchased was in-
cluded in this book account. Defendant argues that this item,
being due upon a "special contract," could not be charged
against it in this account, but we see no reason why it was not

properly so charged. It was a claim against the company on December 3, 1912. Oakman, the president of the company and its responsible directing officer, wrote Dillon telling him not to worry about this one thousand five hundred dollars, and assuring him that it would be paid. It was somewhat irregular to enter it upon the books as late as August, 1914, but it made a part of the transaction between the parties and was properly included in the account between them. The justice of the claim is not denied, and the only defense set up thereto is the statute of limitations, and that it was not properly included in the proofs to sustain the account. Had the entry been made as the first item of the account and entered at the date of Oakman's letter, no objection, it seems, could properly have been made to it. We are not favored with the date or terms of the original contract except by inference. Counsel has not seen fit to call our attention to the contract if it is included in the transcript, and we have been unable to find it, but it is claimed that at the time the item was entered in the books it was barred by subdivision 1 of section 339 of the Code of Civil Procedure, because founded upon a written agreement made outside of the state of California. We are not directed to the evidence that it was executed outside the state; at least we can find no citation to any such evidence, and we have been unable to find such evidence in the transcript. The history of the item, taking the statements of defendant's counsel unsupported by citations to the evidence, is that it was due January 1, 1911; it appears in evidence that on December 3, 1912, Oakman, the president, promised in writing that it would be paid; that again on January 23, 1913, Amstein, who upon Oakman's death had apparently assumed direction of the corporation's affairs in Massachusetts, wrote Dillon that "the matter will surely be taken care of in due time"; that on August 1, 1914, Dillon entered the item in his account before finally presenting it to the company. We are constrained to leave the matter as the trial court found it.

The count upon an account stated is also sustained by the evidence. Dillon testified that he deposited the account in the postoffice on or about August 1, 1914, properly directed to the defendant at its office in Massachusetts, and that he paid the proper postage thereon. It is therefore presumed that the letter with the account therein was delivered to the defend-

ant; but it is not necessary to rely on this presumption, for on the 17th of August, 1914, Amstein wrote Dillon a letter which cannot be interpreted otherwise than as a promise to settle Dillon's book account, and on September 2, 1914, Amstein again wrote Dillon promising to bring about a settlement, and on September 15, 1914, the matter was brought before the directors, as shown by a letter from Amstein to Dillon written on the company's stationery, and in which the hope was held out to Dillon that the matter would soon be fixed up with him. On October 6, 1914, Amstein again wrote to Dillon asking him for the lowest figures that he would take in settlement of his claim, and on November 4th again wrote, saying that he had had the matter up before the directors, and assuring him that it would be fixed up soon, and as late as December 28, 1914, Perry, another officer of the company, wrote Dillon saying that they had discovered that there were many obligations to be met, among them that of Dillon, and asking him for a statement of his account, together with different methods of settlement that might be satisfactory to him, and reminding him that the company was without funds, but promising that they would make desperate efforts to get the same. Nowhere in this correspondence is there any objection to Dillon's account.

When an account is rendered to a debtor it becomes his duty to make seasonable objections thereto, if any he has, and if he does not do so the account becomes an account stated and the foundation of an independent cause of action, which arises thereon whenever a reasonable time has elapsed without any objection being made thereto. It has been held that under certain circumstances failure to object for six months after the receipt of an account by the debtor is unreasonable (*Crane* v. *Stansbury*, 173 Cal. 631, [161 Pac. 7]), and in *Atkinson* v. *Golden Gate Tile Co.*, 21 Cal. App. 170, [131 Pac. 107], a space of twenty-five days which elapsed after rendition of the account without objection thereto being made on the part of the debtor established the account as an account stated.

The facts of this case clearly sustain the allegations of the second count of the complaint. (*Auzerais* v. *Naglee*, 74 Cal. 60, [15 Pac. 371]; *Hendy* v. *March*, 75 Cal. 566, [17 Pac. 702]; *Mayberry* v. *Cook*, 121 Cal. 588, [54 Pac. 95]; *Terry* v. *Sickles*, 13 Cal. 427; *Cowell* v. *Snyder*, 171 Cal. 294, [152 Pac. 920].)

It is contended, however, that the two items above mentioned,—one thousand five hundred dollars and $468,—were barred by the statute of limitations before the presentation of the account in August, 1914. We think the evidence sufficient to sustain a finding that the company kept these items alive by repeated promises to pay the same from time to time, and that, therefore, they were never barred.

In this case the labor of the court has been rendered more difficult by the failure of counsel to indicate where the evidence supporting their various contentions might be found in the transcript or in the appendix to appellant's opening brief. We think the court may, therefore, be pardoned if any mistakes have been made in reciting the evidence. The writer has made a diligent effort to discover the facts as stated in the briefs, but in some instances has been unable to do so.

The judgment is affirmed.

Lennon, P. J., and Sturtevant, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 2, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 2, 1918.