[Civ. No. 3034. Third Appellate District.—April 19, 1927.]

CALIFORNIA BEAN GROWERS ASSOCIATION (a Corporation), Appellant, v. E. C. WILLIAMS, Respondent.

[1] CO-OPERATIVE ASSOCIATIONS — ADVANCES TO GROWER — EXPENSES —CONTRACTS—EVIDENCE.—In this action by a co-operative bean growers' association against a grower member to recover the excess of the advances, charges, etc., over the receipts for the crop of said grower, it was error for the trial court to hold that under the contract between the parties said grower would pay only his proportion of the expenses for cleaning, processing, and marketing all the beans handled by the association for the year in question, and to exclude testimony as to the actual costs of those items in connection with the beans of said grower.

[2] ID. — SALE PRICE — PLACE OF SALE — EVIDENCE. — In such action, where the contract provided that the beans were to be sold at the reasonable and fair prices obtainable by the association in the open markets or elsewhere, etc., testimony as to where the beans were sold and as to the prices received therefor, and that the prices were reasonable and fair prices for the kind of beans being marketed, was properly admissible; and the fact that the association might be liable if the beans were not sold for the full market value then prevailing for the class of beans marketed constituted no reason for excluding testimony as to the sum realized on the sale of defendant's beans and as to where they were sold and the conditions under which they were sold.

[3] ID.—REIMBURSEMENT FOR ADVANCES—IMPLIED AGREEMENT.—Where the contract between the parties expressly provided for advances and specified that such advances might be deducted from the receipts on sale of the beans, this implied that the grower would reimburse the association for all such advances; and such advances constituted the basis for an account stated.

[4] ID.—FINAL STATEMENT—STATED ACCOUNT—EVIDENCE.—Where advances were admitted, and the life of the contract had expired at the time of the rendering of the account by the association to defendant, and there were no other transactions taken or had between the association and defendant, other than as related to the crop for the year covered by said account, and said account on its face purported to include all the beans handled by the association for that year, and a balance was struck, and the record

---

4. Definition and elements of accounts stated, notes, 62 **Am. Dec.** 85; 27 **L. R. A.** 811. See, also, 1 Cal. Jur. 195; 1 **R. C. L.** 207.

showed that no other beans were involved, said account should
have been admitted in evidence as a stated account.

[5] ID.—DELAY IN MAKING OBJECTIONS—IMPLIED CONSENT—EVIDENCE
—ORIGINAL BOOKS—AGENCY.—Where said account remained in pos-
session of defendant for over two years, and no objection was
ever made to the association concerning the same, nor was the
accuracy thereof ever questioned by defendant until the filing of
his answer to the complaint of the association to recover the
amount shown by said account to be due from defendant, such
delay constituted an implied consent to the account; and the
original books in which the entries were made were not required
to be first produced; and the relationship of said parties was not
such that the account rendered could not become a stated account.

(1) 2 C. J., p. 998, n. 31 New. (4) 1 C. J., p. 726, n. 61. (5)
1 C. J., p. 691, n. 96, p. 729, n. 99.

APPEAL from a judgment of the Superior Court of
Sutter County. K. S. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Sapiro & Hayes for Appellant.

A. H. Hewitt and Loyd E. Hewitt for Respondent.

PLUMMER, J.—Action by plaintiff to recover excess of ad-
vances made by the plaintiff to the defendant over and above
the receipts of the defendant's crop of beans marketed by
the plaintiff for the defendant. Judgment of nonsuit was
entered in the trial court and from this judgment the plain-
tiff appeals.

In this opinion the word "Association" will be used to
designate the plaintiff and appellant.

The Association is a farmers' co-operative association do-
ing business on a nonprofit basis. Its purpose is to market
beans of member growers. The Association operated under
standard form of contract, known as the "bean crop con-

5. Inference of consent to balance from retention of account,
note, 136 Am. St. Rep. 45. See, also, 1 Cal. Jur. 197; 1 R. C. L.
213. Effect of retaining statement of account to render it an ac-
count stated, notes, 29 L. R. A. (N. S.) 334; L. R. A. 1917C, 447.
Reasonable time within which to object to an account so as to pre-
vent its becoming an account stated, note, 18 A. L. R. 887.

tract" and was executed by the Association and the defendant covering beans to be grown by the defendant and delivered to the plaintiff during the years 1918, 1919, and 1920. The action does not involve any beans grown or delivered during the year 1918, nor does it appear that any beans were grown by the defendant and delivered to the plaintiff during the year 1918. One count in the action was for damages for failure of the defendant to deliver beans to the Association during the year 1920, but the answer of the defendant sets forth that no beans were grown by the defendant during the year 1920. The count in the plaintiff's complaint relating to the 1920 alleged crop of beans was upon information and belief and was abandoned upon the trial. The action involves only the crop of 1919.

This appeal is based upon rulings made by the trial court excluding proffered testimony, but before making a statement thereof and considering the same, we will set forth certain portions of the agreement entered into between the Association and the defendant. Section 2 of the agreement authorizes the Association to purchase bags, sacks, and twine and other necessary materials for the use and account of growers and the grower authorizes the Association to pay on his account all actual costs of freight, cartage, loading, cleaning, warehousing, insurance, selling, and any other proper charge not specified, and, in addition, authorizes the Association to deduct and retain an Association charge not in excess of one dollar per ton. Section 3 appoints the Association as the agent of the grower to fix a reasonable price at which his beans may be sold, and below which none should be sold, to act for the grower in negotiating loans on his crop at his request; to process or clean or store any and all of his beans and to sell the same on his account and to pay to the grower the net proceeds, less all costs and deductions herein provided.

Section 5 specifies that the grower is to harvest, pick, and prepare his beans for shipment and to warehouse them at the nearest convenient shipping point as delivery to the Association for marketing for his account in a public warehouse and deliver warehouse receipts to the Association. The Association agrees to advance the grower, or to secure for him as an advancement, such amount as may be deemed proper, based upon general market crop conditions, such

advance to be repaid the Association out of the sale of the beans.

Subdivision b of section 6 authorizes the Association to reclean any and all beans at the expense of the grower; section 8 is to the effect that the Association agrees to sell and market the beans at the reasonable and fair prices obtainable by the Association "in the open market or elsewhere, subject always to the conditions of supply and demand, competitive offers and governmental rules and authority."

Section 9 specifies that the Association shall market and sell the beans of the grower, mingled with beans of like variety and grade delivered by other growers at the reasonable and fair value thereof, and the grower agrees that his beans shall be so handled and that the returns therefrom, less brokerage and all other costs and charges and the Association charge as set forth in paragraph 2, shall be paid to him on a proportionate basis out of the amounts received by the Association during the season from the sale of said beans, etc.

The complaint is in four counts, three only of which need be mentioned, the fourth having been abandoned. The first count is based upon an account stated. The third count alleges a book account. The second cause of action alleges that the Association agreed to receive beans as the defendant's agent, to process, clean, and store the beans for his account, and to pay for his account all charges arising from the handling and selling of beans, and after deduction of the charges and Association charge not to exceed one dollar, to return to the defendant the net amount received from the sale of his beans.

It is alleged in the complaint and admitted in the answer that the Association advanced to the defendant, on account of his bean crop of the year 1919, the sum of $343.21. The complaint further sets forth that the beans received from the defendant were sold for the sum of $106.57; that the total charges, including the Association charge against said beans, amounted to $77.34, leaving a net sum of $29.23, which defendant was entitled to receive under the contract. The amount received on the sale of the beans, added to the charges paid by the Association deducted from the advances made by the Association for and on behalf of defendant, left a balance owing to the Association by the defendant of

the sum of $314.18. It is for the recovery of this sum that the action is prosecuted.

On the ninth day of February, 1922, the Association executed and delivered to the defendant an account showing the advances made by the Association for and on behalf of the defendant, all charges and expenses incurred by the Association in connection with processing, marketing, etc., of the defendant's crop, the amount received from the sale thereof and the balance due the Association. This statement of account, omitting the portions which do not change the character thereof, is as follows:

"California Bean Growers Association
"120 Battery Street,
"San Francisco, California.

"Name E. C. Williams,
"Address Rt. #1, Gridley, California

---

"1919 Season

\* \* \* \* \* \* \*

---

To Cash Advanced For Your Account:

| | | |
|---|---:|---:|
| Cash | $343.41 | |
| Freight and drayage | 30.50 | |
| Insurance | .75 | |
| Handling and weighing | 11.43 | |
| Cleaning and drying | 25.86 | |
| Fumigating | | |
| Sacks | | |
| Assn. charge 12650 lbs. at $1.00 ton | 6.32 | |
| Storage on screenings | 2.48 | |
| Net Damaged Sale. 9889 lbs. at $1.06411 | | $105.23 |
| | | 315.52 |
| | $420.75 | 420.75 |
| Balance due Association | $315.52 | |
| Sale screenings 817 #C1644 | 1.34 | |
| | $314.18" | |

This statement of account delivered by the Association to the defendant remained in his possession for over two years,

and so far as the record discloses, no objection was ever made to the Association concerning the same, nor was the accuracy thereof ever questioned by the defendant until the filing of his answer herein. This statement of account was excluded by the trial court, and such ruling is assigned as error.

[1] The plaintiff also sought to prove the different items of expense making up the account and constituting the actual costs of cleaning and processing the defendant's beans and the actual costs paid for freight.

The court excluded testimony as to the actual costs of the items set forth and in so doing stated its views as follows: "I will hold that under those provisions of the contract, that this man would pay his proportion of the cleaning of all the beans you had for that year and any other expenses that was had in the processing of the beans for the market and marketing them; that you could not keep a separate account with him for processing his particular lot." This ruling was also assigned as error. The plaintiff also sought to introduce testimony as to the manner in which it sold the defendant's beans and the amount received therefor. Testimony to this effect was excluded by the court on the ground that the plaintiff must first show the market value of the beans in question and that it sold them for the market value.

As we have shown, section 2 of the contract authorized the Association to pay on account of any grower the actual costs of freight, cartage, loading, cleaning, and warehousing his beans. The beans were to be harvested, picked, and prepared for shipment by the grower and by him placed in the warehouse nearest a convenient common shipping point. The agreement does not provide for pooling freight charges, cleaning charges, etc., of the bean grower by the respective growers. This, for the evident reason that one lot of beans may be produced at a long distance from a warehouse and the freight and drayage charges much greater than in other instances. Likewise, with regard to the cleaning charges, some beans are clean and some are foul and the expenses, or, as said in the agreement, the actual costs of cleaning beans grown by different growers under different conditions might vary to such an extent that it would be inequitable to charge one grower whose

crop was clean and whose drayage and freight charges were light with the cost and expenses of cleaning a crop grown by a grower that was foul and whose freight and drayage charges, by reason of distance, might be much greater. The overhead charges of marketing, insurance, etc., were pooled because these charges were burdens upon all the beans handled and might very well be proportionally charged against the different growers, but whatever the reason for the drawing of the contract, the contract provides for the grower paying the actual costs and, therefore, testimony as to such actual costs should have been admitted, irrespective of whether the contract should or should not have so provided.

[2] Again, the contract provides that the beans were to be sold at the reasonable and fair prices obtainable by the Association in the open markets or elsewhere, etc., which clearly admitted testimony as to where the beans were sold and as to the prices received therefor, and that the prices were reasonable and fair prices for the kind of beans being marketed, and if the beans were not sold for the full market value then prevailing for the class of beans marketed, it might be that the Association would be chargeable for having sold the beans for less than the market value. This, however, constitutes no reason for excluding testimony as to the sum realized on the sale of the defendant's beans and testimony as to where they were sold and the conditions under which they were sold. It might be further stated that the beans handled by the Association for the defendant were damaged beans and were classed as third grade. Whether there was or was not a market or any market value for third-grade beans does not appear.

[3] Finally, did the court err in excluding the account rendered by the Association to the defendant and sued upon as a stated account? The contract expressly provided for advances and specified that such advance might be deducted from the receipts on sale of the beans, which necessarily implies that the grower would reimburse the Association for all such advances. (*In re Joseph F. Murphy Estate Co.*, 214 Pa. 258 [63 Atl. 745].) The principle involved in that case and in this is almost identical, although a co-operative association was not involved. That a co-operative association may recover for advances is also supported

by *California Raisin Growers' Assn.* v. *Abbott,* 160 Cal.
601 [117 Pac. 767], and *Sugar Loaf O. G. Assn.* v. *Skewes,*
47 Cal. App. 470 [190 Pac. 1076]. In the *California Raisin
Growers' Assn.* v. *Abbott, supra,* in an equitable action for
an accounting by all the parties, advances made to some
of the growers were allowed to be recovered in order that
a just proportion of the assets of the association might be
distributed to other growers. In the *Sugar Loaf O. G.
Assn.* v. *Skewes,* the association was allowed to recover for
picking and packing, hauling, washing, and shipping of the
defendant's oranges.

[4] As a reason why the account should not be admitted
in testimony as a stated account, the respondent suggests
first that the parties seeking to prove an account stated
must first show a pre-existing indebtedness between the par-
ties. The pleadings in this case established that fact. The
plaintiff alleged an advance which constituted in every legal
sense a loan of $343.41 and the answer of the defendant
admits the same. The transcript also shows that during
the course of the trial the advance by the Association was
admitted by the defendant. As a second reason why the
account should be excluded it is argued that the accounting
was not a final accounting or intended to be a final settle-
ment. The record shows that the life of the contract had
expired when the accounting was rendered, that there were
no other transactions taken or had between the Association
and the defendant, other than as related to the defendant's
crop of beans for the year 1919. The defendant's answer
excludes the idea that any of the beans were involved, in
that it set forth that the defendant grew no beans during
the year 1920. The account purports on its face to in-
clude all the beans handled by the Association for the year
grown during the cropping season of 1919. The agreement,
in one of the subdivisions of section 9, provides for the
storage season ending on April 1st of the year succeeding
that in which the beans are placed on storage contemplat-
ing annual settlements.

The whole record shows that no other beans were in-
volved. Relying upon the case of *Coffee* v. *Williams,* 103
Cal. 550 [37 Pac. 504], it is argued that the account rendered
is only a memorandum and is not a final settlement. The
case of *Coffee* v. *Williams, supra,* is readily distinguishable

from the case at bar. In the case of *Coffee* v. *Williams* there was no attempt made to balance the account and show the amount due and, as stated by counsel for appellant herein, such balance as might have been struck in that case would have been different from the amount claimed in the action. It was, as stated by the court, a memorandum of transactions up to and including the date of the account. As stated by the court in the Williams case, the account should show that it was intended as a final settlement up to date. In the present case, the account rendered does show the amount due and owing from the defendant to the Association at the time of its rendition, the balance was struck and the amount due stated and is exactly the amount sued for in the instant case. All the items set forth in the account rendered by the Association indicated how the charges were incurred, and for what purpose the expenditures were made. In the Williams case, as just stated, no balance was struck. Here the balance has been struck and the amount alleged to be due from the defendant to the Association plainly stated.

Respondent also relies upon the case of *Beltaire* v. *Rosenberg*, 129 Cal. 164 [61 Pac. 916]. A reference to that case, however, shows no applicability to the circumstances with which we are dealing. The correspondence between the parties in the Beltaire case shows that the account lacked the essence of finality and was not agreed to by the defendant either directly or by implication. The case of *Bennett* v. *Potter*, 180 Cal. 736 [183 Pac. 156], is not decisive of any question here involved. The Bennett case is authority to the effect that a written contract cannot be altered by oral statement of account.

[5] In the case at bar, as we have said, there were no objections raised by the defendant to the account rendered by the Association, and while it is held that the defendant must consent to the account in order to make it a stated account, it is now well settled that such consent may be implied, where the defendant, after the receipt of the account, waits for an unreasonable time before making or without making any objection thereto. As stated in 1 California Jurisprudence, page 197, section 54: ''An acknowledgment need not be made in express words, but may be implied from any act or statement which necessarily and directly

admits or presupposes the existence of the debt, and the obligation to pay it. Accordingly, if the account be sent to the debtor, and he does not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated.''

To the same effect is 1 C. J., page 691, section 276, where the authorities are cited to this statement of the law: ''Where an account is rendered by one person to another, the retention of the same by the latter beyond a reasonable time without objection is evidence of his assent to the correctness of the account, and, accordingly, is evidence of an account stated.''

In *Mayberry* v. *Cook,* 121 Cal. 588 [54 Pac. 95], it is held, quoting from the syllabus: ''The agreement between the parties to an account stated, that all the items therein are true, need not be express, but may be implied from circumstances, such as the sending of the account from one to the other, who makes no objection thereto within a reasonable time.'' See, also, *Atkinson* v. *Golden Gate Tile Co.,* 21 Cal. App. 168 [131 Pac. 107]. In *Schneider* v. *Oakman Con. Min. Co.,* 38 Cal. App. 338 [176 Pac. 177], the court, in considering when an account rendered becomes an account stated, said: ''When an account is rendered to a debtor it becomes his duty to make seasonable objections thereto, if any he has, and if he does not do so the account becomes an account stated and the foundation of an independent cause of action, which arises thereon whenever a reasonable time has elapsed without any objection being made thereto. It has been held that under certain circumstances failure to object for six months after the receipt of an account by the debtor is unreasonable.'' (Citing cases.) And in *Crane* v. *Stansbury,* 173 Cal. 631 [161 Pac. 7], and *Atkinson* v. *Golden Gate Tile Co.,* 21 Cal. App. 170 [131 Pac. 170], ''a space of twenty-five days which elapsed after rendition of the account without objection thereto being made on the part of the debtor established the account as an account stated.''

The objection that the relationship of the parties was such that the account rendered could not become a stated account, as held by the trial court, has been distinctly overruled in the recent case of *California Bean Growers' Assn.* v. *Rindge Land & Nav. Co.,* 199 Cal. 168 [47 A. L. R. 904,

248 Pac. 658], where the supreme court held that an account very similar to the one with which we are dealing constituted an account stated and the fact that the relationship of principal and agent existed between the parties did not change the rule as to the account becoming a stated account, under the conditions which we have heretofore set forth. The holding had in the last case cited clearly establishes the admissibility of the testimony excluded by the trial court. The account stated being a new account, the original book in which the entries were made was not required to be first produced. (*Gardner* v. *Watson*, 170 Cal. 570, 574 [150 Pac. 994]; *Hendy* v. *March*, 75 Cal. 566 [17 Pac. 702]; *Coffee* v. *Williams*, 103 Cal. 550, 556 [37 Pac. 504].)

Avoiding any expression of opinion as to the conclusions that should be drawn by the trial court upon the facts involved herein upon a retrial of this case, it is sufficient to say that the evidence erroneously excluded, if admitted, would have been sufficient to establish a *prima facie* case, and necessitates a reversal of the judgment herein.

The judgment of the trial court is reversed.

Hart, J., and Finch, P. J., concurred.