362 P.2d 977

**SANTO TOMAS PRODUCE ASSOCIATION,**
Plaintiff-Appellee,

v.

**W. M. SMITH,** Defendant-Appellant.

No. 6740.

Supreme Court of New Mexico.

June 20, 1961.

W. C. Whatley, R. E. Riordan and E. H. Williams, Jr., Las Cruces, for appellant.

J. D. Weir and J. R. Crouch, Las Cruces, for appellee.

CARMODY, Justice.

This case arose because of claimed liability of a member grower to a cooperative marketing association. The trial court found the issues in favor of the association and the defendant appeals.

The Santo Tomas Produce Association was incorporated in 1957 as a non-profit agricultural cooperative marketing association, and defendant Smith was one of the thirteen members who, by agreement, made the association the sole marketing agency for onions planted in the Fall of 1956. The original agreement was orally amended by the parties because of labor shortages, so that the association took care of gathering, harvesting and hauling of the onions to the sorting shed, at the expense of the individual members, including Smith. This was in addition to the written agreement, which contemplated the grading, processing, shipping and marketing of each member's crop. Unfortunately for Smith, who had seventeen acres of onions, the total cost of performing the above services was $14,328.65, whereas the onions were sold for only $6,371.24. The trial court credited Smith with the value of his stock in the association together with his portion of the savings made by the association, and rendered judgment against him for the difference of $6,738.04.

The defendant's first point relied upon for reversal is that the trial court erred in refusing to grant his motion for dismissal at the close of the plaintiff's evidence. This motion was grounded generally upon the fact that the marketing agreement provided that title to the product would be vested in the association upon delivery to the shed—thus, that a buyer and seller relationship existed, as distinguished from the association's contention that a principal and agent relationship was provided by the agreement. The defendant also, as a part of his motion, relied upon the fact that the agreement specified that the produce delivered "shall be pooled and marketed as fresh, processed, or other form, all in the sole discretion of the Association, and thereafter all net earnings shall be distributed to the grower members of the association ratably and proportionately according to individual deliveries so made * * *."

Following the denial of defendant's motion, he proceeded to introduce evidence devoted principally to the claimed delay on the part of the association to promptly gather, harvest and haul his onions, together with some evidence as to the handling thereof after their shipment on the railway. The motion was not renewed at the close of the defendant's case, nor at any other time in the proceedings, and therefore, under the rule announced in Apodaca v. Allison & Haney, 1953, 57 N.M. 315, 258 P.2d 711, and Bondanza v. Matteucci, 1955, 59 N.M. 354, 284 P.2d 1024, any error (if such it was) on the part of the trial court to grant the motion was waived.

However, even though this claim of error need not be considered, we have carefully examined the transcript together with the articles of incorporation, by-laws and the marketing agreement, and feel that, when they are considered together with the circumstances, the intention of the parties, and the provisions of the sections of the statute involved (being particularly §§ 45–14–3(e), 45–14–6(c), and 45–14–16, N.M.S.A., 1953 Comp.), it is obvious that the relationship created was that of principal and agent, or that the association is a bargaining agent, not an independent enterprise. See, Packel, Cooperatives, 1940 ed., §§ 39 and 39(b); and 18 Ore.L.Rev. 157, wherein many cases are assembled and analyzed.

With respect to the pooling provision, it is plain that it was intended by the parties, as shown by all of the evidence, that it was purely for the purpose of convenience in the shipping of the product in order to make up carload lots, not pooling in its usual sense. There was no conflict among the witnesses as to such intent and even the defendant Smith testified that if there had been a profit from the sale of *his* *onions*, he would have been entitled to it. The processing and marketing charges, as determined by the board of directors and applicable to all of the members, were the association's only source of income. Separate accounts were maintained for the individual members as to costs and proceeds of sale. To accept defendant's premise would, in effect, be saying, "If I win, the profit is mine; if I lose, you must pay." Such strained construction of the agreement, considered with the articles of incorporation and by-laws, is not reasonable. We find no merit in defendant's first point.

The second point relied upon for reversal is claimed error in two of the findings of fact made by the court. The gist of this claim is that the charges for grading, processing, shipping and marketing were in the nature of advances from the association to the defendant and chargeable to the association.

Defendant, without the citation of any authority whatsoever, seems to contend that

the association could not charge, or, in any event, recover for the processing and subsequent costs. Such a contention is not in accordance with the general rules of law as we construe them. See, California Bean Growers' Ass'n v. Williams, 1927, 82 Cal. App. 434, 255 P. 751; Arkansas Cotton Growers' Co-op. Ass'n v. Brown, 1929, 179 Ark. 338, 16 S.W.2d 177; and Texas Certified Cottonseed Breeders' Ass'n v. Aldridge, 1933, 122 Tex. 464, 61 S.W.2d 79. See, also, supplemental annotations and cases cited thereunder in 77 A.L.R. 405; and 98 A.L.R. 1406, particularly subdivisions II f, ff, and g.

Under this point, defendant apparently has no quarrel with the charge for the harvesting and hauling, and it is somewhat incongruous to draw the distinction which defendant attempts to make. Additionally, defendant's attack upon the two findings falls short of a proper attack under the rules, but, even so, there being no attack on the remaining findings made by the trial court, they amount to the facts before us and amply support the judgment.

The defendant's third and last point is based upon the court's refusal to find the association negligent in its handling of the produce, claiming that this was the proximate cause of the loss. However, here again the defendant has not attacked the trial court's findings, one of which was as follows:

"16. That plaintiff's officers and directors acted in good faith and exercised reasonable discretion in the harvesting, hauling, processing and marketing of defendant's 1957 summer onion crop, and that no fraud or gross mistake on the part of plaintiff was shown or exists."

The authorities, almost without exception, hold that a cooperative marketing association is not liable for the loss due to delay in making sales, in the absence of unreasonable exercise of discretion. See, California Bean Growers' Ass'n v. Rindge Land & Nav. Co., 1926, 199 Cal. 168, 248 P. 658, 47 A.L.R. 904. The tenor of all of the authorities is also that the judgment of the cooperative cannot be questioned, except for fraud or gross mistake. Arkansas Cotton Growers' Co-op. Ass'n v. Brown, supra; Texas Certified Cottonseed Breeders' Ass'n v. Aldridge, supra.

Therefore, in view of the findings of the trial court, we find that defendant's point in this respect is without merit.

The judgment will be affirmed. It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.

CHAVEZ and MOISE, JJ., not participating.