[Civ. No. 1079.   Fourth Appellate District.—July 5, 1934.]

ALICE H. WRIGHT, Respondent, v. G. L. STROBECK, Appellant.

Philip Storer Thacher and Lester J. Penry for Appellant.

Robert B. Burch and Harrison G. Sloane for Respondent.

HAINES, J., *pro tem.*—This action was originally brought by Alice H. Wright, plaintiff and respondent, as assignee of Harrison G. Sloane and Robert B. Burch, to recover from appellant G. L. Strobeck, and V. A. Adams and W. E. McDonald, as defendants, the amount of certain attorneys' fees alleged to be due from them to said Sloane and Burch. The complaint, as initially filed, set out two causes of action, the first, against all three defendants upon a *quantum meruit,* and the second, against Strobeck alone upon an account stated, both counting on an alleged employment of respondent's assignors by appellant Strobeck and said Adams and McDonald, on or about March 25, 1931, to prosecute in the United States District Court for the Southern District of California a proceeding in bankruptcy against one Claus Spreckels to enforce and collect certain claims against him, in consequence of which certain settlements were alleged to have been obtained. In the second cause of action it was claimed that on or about September 23, 1931, an account was stated between Strobeck and respondent's assignors whereby it was agreed that "taking into account payments theretofore made by said defendants (Strobeck et al.) there

was due to said attorneys for the service hereinabove referred to, for the benefit of defendant G. L. Strobeck, the sum of $1883'' upon which a subsequent payment of $480 was said to have been made, leaving the rest unpaid. The defendants made separate answers to the complaint. The answer of appellant Strobeck traversed all of the matters alleged and by way of a separate defense asserted that plaintiff's assignors had been employed by one Thacher to represent him and his co-defendants for the sole purpose of obtaining an adjudication of bankruptcy against Spreckels and had been fully paid the amount of their reasonable compensation therefor. At the trial respondent dismissed her case as to the first cause of action stated in her complaint and as to the defendants other than appellant Strobeck, and proceeded against him upon her second cause of action. Upon the conclusion of the trial she was allowed to file, as conforming to the proofs, an amended complaint following generally the lines of the second cause of action in her original complaint, but alleging that her assignors "were duly employed at the special instance and request of and rendered legal services for and to the defendant G. L. Strobeck in and about proceedings in bankruptcy against one Claus Spreckels in the United States District Court . . . at the conclusion of which the defendant effected a compromise of his claim against said bankrupt for the sum of approximately $20,000.00''. This pleading went on to allege the account stated, and that it showed a charge of $2,000 less a credit of $167, leaving a balance of $1833 on which respondent's assignors later received $605.32, leaving still due $1227.68, the right to collect which had been assigned to respondent. The court's findings were in accordance with the amended complaint and judgment against appellant for the said $1227.68 in favor of respondent followed, from which the present appeal is prosecuted.

Some question has been raised about the sufficiency of the showing in the trial court that Sloane and Burch had, in fact, assigned the account to respondent, but any doubt on that score has been resolved by evidence which was permitted to be taken at the time of the oral argument, so that it will be considered that the assignment has been shown, and this leaves, as the only matter to be determined, whether there is evidence in the record from which the

trial court could reasonably have concluded that an account had been stated as now alleged.

It appears that in April, 1931, Philip Storer Thacher, who had been and is the general attorney for appellant Strobeck, arranged with Harrison G. Sloane, also an attorney, to represent Strobeck, who held a judgment against Spreckels, as well as to represent Adams and McDonald, two other creditors of Spreckels, in procuring an adjudication of bankruptcy against him. Whether the employment went any further and contemplated that Sloane should represent the creditors' claims after such adjudication had been obtained is disputed. At any rate Sloane assisted by Robert B. Burch, also an attorney, whom he called into the matter with Thacher's knowledge, instituted the bankruptcy proceedings and the adjudication of bankruptcy eventually followed. In the meantime and on May 19, 1931, Sloane wrote Thacher that the bankruptcy petition had been set down to be heard on July 27th; that a vigorous contest was to be anticipated; that he and Burch had tackled the matter on short notice without stopping to make an arrangement about fees, but that there should be a retainer provided, going on to say: "You do not appear as an attorney of record and I do not know just what your relationship is with the different parties as to fees. One way or another, of course, you must be taken into consideration. I believe that we should call on the petitioners for a levy at this time which will raise sufficient funds to pay Burch and myself at least $500.00 as a retaining fee. What will be the best way to go about it? Do you want to negotiate it or shall we take it up direct with our clients?" Thacher, according to Sloane, answered that "he had other arrangements with Mr. Strobeck, did not participate in ours, we were to deal directly with the petitioners". Accordingly, Sloane on May 25, 1931, wrote an identical letter to each of the three petitioners containing, among other things, the language: "We have suggested to Mr. Strobeck the propriety of receiving a $500.00 retaining fee, which will also compensate us for our services up to the present time, and he has responded by giving us his check today for one third, $167.00." According to Sloane, Adams and McDonald on receiving this letter came in and asserted that Thacher

had told them they need pay no fees, and paid none. Thereafter, on June 6th, Burch and Sloane wrote Thacher that Strobeck, McDonald and Adams, doubtless in good faith, had all reported him as saying that all expenses except the court fees would be paid from the bankrupt estate; that Strobeck had nevertheless appreciated the situation and had paid $167 as his share of a $500 retaining fee, but the other two had declined to do so, but that: "As we explained to him (Strobeck) the Bankruptcy Court sometimes allows fees to the attorney for the petitioning creditors. It is purely discretionary, however, and the amount is purely conjectural, and is likely to be inadequate. If no adjudication follows there could, of course, be no allowance of fees. Under these circumstances, you would not, and I am sure you realize that we would not, agree to tackle a proposition of this magnitude, on a fair chance of going unpaid." In this letter the writers go on *inter alia* to say: "It appears that as a result of. the filing of our petition and the prospect of an attack being made upon the trust, representatives of Mr. Spreckels have been moved to offer real money in settlement of these claims. Mr. McDonald has accepted the offer made to him and has assigned his claim. Mr. Adams apparently is contemplating a similar settlement and his total figure will undoubtedly be greater. . . . So far as Mr. Strobeck is concerned we are willing to proceed with the matter upon the retaining fee which he has paid. We will apply to the court for an allowance and give credit for whatever is received, but we will expect our total fee to be commensurate with the work involved and the amount finally realized. We appreciated his spirit in the matter, to the extent that we told him we would expect no further payment from him in case the effort to throw Spreckels into bankruptcy should fail, but if as a result of the bankruptcy he gets paid pretty substantially we will call on him for a further substantial fee. On the other hand if he does not do much better than McDonald and Adams, we will be easy on him."

Sloane says that copies of this letter were sent to Strobeck and the other two petitioners. There is in the evidence a further letter from Sloane to Thacher under· date of July 14, 1931, discussing the progress of the case. Subsequently

after a contest complicated by an effort of McDonald and Adams to withdraw as petitioning creditors, and after certain Los Angeles creditors had intervened, Sloane and Burch succeeded in procuring the adjudication of bankruptcy, after which Thacher procured for Strobeck a settlement satisfactory to Strobeck, apparently in the amount of $20,000. Thereafter on September 1, 1931, Sloane wrote Thacher a letter which is in part as follows: "Mr. Burch and I are in a good deal of a quandary about the matter of our attorneys' fees in the Spreckels case. We can hardly dispose of it on the basis of an ordinary bankruptcy proceeding, for the reason that it has resolved itself into an enforced settlement of the debts due to Adams, McDonald and Strobeck. Our attorneys' fees should, therefore, be measured properly by the standard of the ordinary situation when a claim is disputed and remains unpaid until suit is filed and brought to an issue, whereupon the parties agree on settlement. Since this suit involved an attack on the Spreckels clan complicated by the attempted withdrawal on the part of Adams and McDonald it seems to me that a ten per cent levy on the total amount of cash paid to the respective petitioners would be about right."

On September 23, 1931, Sloane wrote Strobeck in part as follows: " . . . It seems to be in order . . . to submit our bill, which we enclose herewith. We believe, in view of the nature of the case and the time and skill which we expended in the matter, coupled with a prompt settlement of your claims on a basis satisfactory to you, that a charge of 10% on the actual cash received by you is reasonable and we have made our bill on that basis. We will be able to recover some portion of this amount from the bankrupt's estate, and will, of course, give you credit for your proportion of such sum and for the small balance of costs which remain unexpended on our hands." Sloane went on in this letter to suggest that the recovery from the bankruptcy court would probably not exceed $1,000, "which - should be prorated on the charge to you", that, "accordingly, if you will remit to us $1166.33 . . . at this time, we will let the rest of it ride until this figure has been fixed by the Referee in Bankruptcy". With this letter was inclosed a bill in the words and figures following:

"September 23, 1931.

"Mr. G. L. Strobeck
 "932 Seventh St.,
  "San Diego, California
   "*In re—Claus Spreckels, Bankrupt.*
"Professional services in preparation of Bankruptcy Proceedings against Claus Spreckels, filing and prosecution of the same to adjudication and collection of $20,000.00 in settlement ...................................$2,000.00
"Withheld for later payment.................... 666.66

$1,333.34

 "Credit:
"Received on account......................... 167.00
 "Balance payable........................$1,166.34"

Sloane received a reply to this communication under date October 3, 1931, from Thacher, the body of which is as follows:

"Mr. Strobeck has asked me to reply to your recent letter to him, and as soon as I can get time from the melee caused by the absence of my secretary, I will reply to your letter to him, as well as to your letter to me of September 1st."

On October 29, 1931, Sloane wrote Thacher that he had heard nothing either from him or from Strobeck relative to the attorneys' fee; that the Los Angeles creditors had finally agreed to take one-third of whatever attorneys' fee allowances were made, leaving two-thirds to the San Diego claimants, that the writer understood that Strobeck had secured his cash from the Spreckels people and that a proper portion of it would be devoted to taking care of his attorneys' fees. No answer was made to this letter.

No further communication passed in either direction on the subject, if Sloane's account is accepted, except that Thacher testified to having called three times at Sloane's office to discuss the fees, but to have found him out, until April 14, 1932, when Sloane and Burch joined in a letter to Strobeck saying that on September 23, 1931, they had stated to him their account in the matter wherein they had deferred payment to the extent of $666.66 on the assumption that the petitioners would receive a total of $1,000 to apply

on attorneys' fees; that the petitioners had asked an attorneys' fee allowance of $2,500, but that some part of whatever was allowed would have to be credited to the attorneys for the Los Angeles creditors who had agreed to be satisfied with one-third. It was then suggested with respect to the San Diego petitioners that rather than have the matter drag indefinitely "we are willing to assume that they will receive as their share the full amount asked for, namely, $1666.66". The implication was evidently intended to be that if so much as that were received from the bankrupt estate the portion of the money so received attributable to Strobeck's share of the attorneys' fees would be $404 more than the $666.66 assumed to be obtainable from that source in the bill of September 23, 1931, and the letter was accompanied by a new bill as follows:

"Robert B. Burch

"Harrison G. Sloane

"Attorneys at Law

"1230 J. D. Spreckels Bldg.,

"San Diego, California,

"April 14th, 1932.

"Statement of Account of Mr. G. L. Strobeck

"932 Seventh St., San Diego, California.

"*In re—Claus Spreckels, Bankrupt.*

"Account stated September 23, 1931, Balance
    payable ................................$1,166.34
    "Credit
."By further allowance........................  404.00
                                             ─────────
                                             $762.34"

Sloane testified that long after sending the bill of April 14, 1932, and, as best he could place the time, in September, 1932, "I met Mr. Strobeck on the corner of Sixth and Broadway, in front of the Bank of America, and he was going in one direction, and I was going in the other, and he held up his hand and stopped me. He came over in a cordial way and said: 'That bill of yours, I have arranged with Mr. Thacher to take care of that,' and I said, 'That's fine,' and I went on down to the Court House." He says that neither Strobeck nor Thacher made any objection to the bills submitted. Strobeck's account of the conversation just referred to is that it occurred earlier, just

after he received the letter of September 23, 1931, and that he said to Sloane, ''I received your bill, but I won't pay that because I employed Mr. Thacher and I expect to pay Mr. Thacher and whom he employs to assist him it is up to him to pay. So settle that bill with Mr. Thacher.'' The trial court apparently accepted Sloane's account, both with respect to the date and the substance of this conversation, and it was within its province to do so.

The actual allowance in the bankruptcy proceeding made for the attorneys' fees of the petitioning' creditors was $1250, of which the share of the San Diego petitioners was $833.33, which was on September 7, 1932, collected by Sloane and Burch. Burch thereupon on September 16, 1932, wrote Thacher that though the allowance from the bankruptcy court had been less than anticipated 'in the original statement of September 23, 1931, yet he and Sloane would ''absorb'' the difference and accept from Thacher in full of the balance due from him the $1166.34 called for in this original statement. This resulted in further correspondence back and forth which we do not consider it necessary to recite. The final position taken by Sloane and Burch after the negotiations for settlement had failed and when the case came to trial was that of the $833.33 collected, $555.32 should be credited to Strobeck. Sloane and Burch also recovered for Strobeck $50 expended on costs, the addition of which to the $555.32 makes $605.32. The court's findings and judgment proceed, then, upon the theory that there was an account stated whereby the fees payable on Strobeck's account to respondent's assignors were fixed at $2,000, against which he was entitled to a credit for the $167 retainer, leaving a balance of $1833, on which the said $605.32 should be treated as a further credit, leaving $1227.68 still due and unpaid.

The evidence shows that Strobeck often consulted with Sloane and Burch while they were engaged in the proceedings to have Spreckels adjudicated a bankrupt. There is no doubt that he ratified Thacher's act in employing Sloane and Sloane's act in associating Burch with him. He is shown to have known that Sloane and Burch intended to look to him personally for their fees, less what they could get from the bankruptcy court, and actually to have paid $167 on account of, their fees. He was one of the

parties to whom they sent their letter of May 25, 1931, and one of the parties to whom copies of their letter of June 6, 1931, were mailed. In these circumstances he permitted them to go on and render important services which produced the results that he sought. Sloane and Burch were entitled, in view of what had passed, to assume that he had assented to their position in respect of their fees and there can be no real doubt but that he knew what their position was. Such was the situation when they rendered their statement of September 23, 1931, to which, if Sloane is right about the date of the sidewalk conversation, no other reply was made than Thacher's letter of October 3, 1931, which the trial judge in his oral opinion aptly said amounted to saying: "I am not answering you. I will answer you when I get around to it," and which he concluded to amount in effect to no answer at all. This, if we assume that the sidewalk conversation did not occur until the fall of 1932, was followed by entire silence on the part of Strobeck and Thacher for the most of a year. To be sure, Thacher says that he called three times at Sloane's office and found him out, but that appears to be neither here nor there. There is nothing to show that Sloane knew anything about his visits or that he could not at any time have sought and made an appointment with him nor what he was commissioned to say to Sloane if he had met him.

We think that the record amply justified the trial court in finding that, in view of all that had gone before, the statement of September 23, 1931, when coupled with what it believed to be Strobeck's prolonged failure to object to it, resulted in an account stated. ▮ "An account stated is a document—a writing—which exhibits the state of the account between parties and the balance owing from one to the other, and when assented to, either expressly or impliedly, it becomes a new contract." (*Merchants Nat. Bank* v. *Carmichael*, 50 Cal. App. 749, 752, 753 [196 Pac. 76].) Consent to such a statement is ordinarily implied from failure to object to it within a reasonable time. (*Auzerais* v. *Naglee*, 74 Cal. 60 [15 Pac. 371]; *Hendy* v. *March*, 75 Cal. 566 [17 Pac. 702]; *Mayberry* v. *Cook*, 121 Cal. 588 [54 Pac. 95]; *Atkinson* v. *Golden Gate Tile Co.*, 21 Cal. App. 168, 171 [131 Pac. 107]; *Schneider* v.

*Oakman Con. Min. Co.,* 38 Cal. App. 338, 342 [176 Pac. 177].) The question of what is a reasonable time arose in *Crane* v. *Stansbury,* 173 Cal. 631 [161 Pac. 7], which was an action to recover on an account stated for services rendered by an attorney. The Supreme Court there said: "While all questions of fraud and mistake in combating the force of an account stated are questions of fact for the jury, *where assent is based upon acquiescence arising from a failure to object, the length of time which must pass before an account rendered becomes, by virtue of the recipient's failure to object, an account stated, is one of law for the court."* (Italics ours.) Having reference to the circumstances of that case the Supreme Court said further of the trial court's action: "What the court told the jury in effect was that this delay of six months, if unsatisfactorily explained, was as matter of law unreasonable, and that because of it acquiescence would be presumed and the account would become an account stated. Such, we repeat, is the law." (Citing *Cusick* v. *Boyne,* 1 Cal. App. 643 [82 Pac. 985], *Hendy* v. *March, supra, Standard Oil Co.* v. *Van Etten,* 107 U. S. 325 [1 Sup. Ct. 178, 27 L. Ed. 319], *Fleischner* v. *Kubli,* 20 Or. 328 [25 Pac. 1086], and *Wiggins* v. *Burkham,* 10 Wall. (77 U. S.) 129 [19 L. Ed. 884].) In the case at bar we cannot see that the trial court could have done otherwise than hold that Strobeck's failure, for what it took to be about a year, to make any objection to the account rendered by plaintiff's assignors was a failure to object to it within a reasonable time. It is indeed urged that the failure to make an objection is excused if the previous relations between the parties have been such as to exclude any idea of an acquiescence in the account rendered, as for example when the party charged had previously repudiated the obligation. Suffice it to say that we think the evidence discloses no such situation here so far as Strobeck is concerned. We are in entire agreement with the trial court that respondent made out a case of an account stated on the basis of the bill rendered on September 23, 1931.

It is claimed, however, that even if there was an account stated, its effect would be to entitle respondent's assignors to only $1166.34, as the balance claimed in this original bill, instead of $1227.68, for which respondent was

given judgment. We do not accede to that view. The bill of September 23, 1931, must of course be read in the light of the accompanying letter of even date. When that is done and we disregard the form of the bill and look to its substance, as clearly explained in this accompanying letter, it is manifest that what it means is that there is a charge made of $2,000 and that there is credited against that, as actually paid, only $167, and that the whole balance, which would be $1833, is treated as still due. The rest of the statement goes not to the statement of the account, that is, not to this balance that is due, but only to the method proposed for its payment. Sloane and Burch propose that Strobeck pay them at once $1166.34 in the hope that $666.66 can be gotten from the bankruptcy court and this $666.66 is described as "withheld for later payment". As shown by the letter Sloane expected to get from the bankruptcy court (that is, as we take it, for the San Diego petitioners) not to exceed $1,000 and it was Strobeck's share of that that he figured would amount to $666.66. In that event this would be credited to him and he would not be called upon to himself pay more than the $1166.34. But it is not intimated that if less were obtained from the bankruptcy court he would not be called upon to make up the difference. Ultimately the amount attributable to Strobeck obtained from the bankruptcy court turned out to be less than had been hoped, so that, in the judgment rendered, the amount directly payable by Strobeck was correspondingly increased. But these adjustments in nowise changed the amount the statement of September 23, 1931, had shown to be, at that time, still unpaid on his indebtedness therein stated.

The second statement rendered April 14, 1932, as shown by the accompanying letter as well as certain negotiations shown in the record as having occurred in the fall of that year amounted, so far as respondent's assignors were concerned, only to efforts to obtain a settlement, and whatever concessions were offered with that in view must in view of appellant's failure to agree to a settlement be treated as now withdrawn.

We find no error in the record. The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.