[Civ. No. 11979. Second Appellate District, Division Two.—December 9, 1938.]

CHARLES E. COTTON, Appellant, v. RIVERSIDE CEMENT COMPANY (a Corporation), Respondent.

William H. Brawner and Caryl Warner for Appellant.

O'Melveny, Tuller & Myers, Louis W. Myers and Pierce Works for Respondent.

WOOD, J.—This action was commenced to recover the amount alleged to be due on the sale of coke by defendant to California Fuel and Utilities Company. The trial court directed the jury to return a verdict in favor of defendant and plaintiff appeals from the resulting judgment.

It is alleged in the complaint that on or about November 27, 1936, a contract was made by and between plaintiff and defendant whereby it was promised by defendant that in consideration of previous services of the plaintiff and services to be rendered in the future, consisting in the advertising, exploiting, handling and marketing of coke owned by the defendant from the year 1933 to November 27, 1937, defendant would sell coke to plaintiff in quantity and that if defendant should sell coke to any other buyer defendant would pay to plaintiff a sum not less than $1 per ton of the coke so sold. Plaintiff purchased various quantities of coke from defendant, which plaintiff resold to various individuals. In

May, 1937, defendant sold its entire supply of coke to California Fuel and Utilities Company. Plaintiff seeks to recover $1 for each ton sold to the last-named company.

At the trial the representative of the defendant, A. A. Goethals, was called as a witness under section 2055 of the Code of Civil Procedure. While his testimony was being received a letter dated November 27, 1936, addressed to plaintiff was produced by plaintiff and introduced in evidence by defendant as exhibit A. This letter is as follows: "November 27, 1936. Mr. Chas. E. Cotton, 753 Laurel, Pomona, California. Dear Mr. Cotton: We desire to sell you coke from our plant at Crestmore, to be delivered between November 27th and April 15th, 1937, at $4.00 per ton, F. O. B. our scales at Crestmore. If you take between this period 1,000 or more tons, a rebate of $1.00 per ton will be given you after April 15th. If, however, the tonnage should be under 1,000 tons, we are to discuss the matter again and a possible rebate depending on tonnage, delivered to you, may be made. Under no conditions, however, will the price be less than $4.00 per ton if 500 or less tons have been sold during this period. All coke is to be paid for as it leaves our plant. The first 360 tons are to be paid for at $5.00 per ton, $1.00 per ton applying on the balance due us as per our books November 27, 1936. Yours truly A. A. Goethals Auditor."

The plaintiff was called as a witness and gave testimony concerning the writing and receipt of the letter and concerning the conversation which took place before the letter was handed to him. Plaintiff sought to establish that an oral agreement was made by and between the parties at the time of this conversation. On objection of defendant the jury was excused and the court heard testimony of plaintiff in order to determine whether the issue of the oral agreement should be given to the jury. Mr. Cotton testified that beginning with the year 1933 and up to May, 1937, he had managed defendant's coke pile, containing about 10,000 tons of coke at Crestmore. During this time he had screened, sacked advertised and marketed the coke; that he was the only purchaser of the coke from the defendant and had in turn sold to the ranchers for smudging purposes. Before November of 1936 the winters had been warm and plaintiff's operations had been so curtailed that he had suffered the loss of many

sacks of screened coke because of rotting sacks. The parties had had an oral understanding that plaintiff had the exclusive right to handle the coke but that defendant could sell it to others upon protecting plaintiff in a sum not less than $1 per ton for each ton sold by defendant to third parties. This agreement was referred to by the parties at various times during the period in question. No sales were made by defendant during the 1936–1937 coke season except to plaintiff with the exception of the sale of the entire supply of 8,000 tons in May, 1937. This sale forms the basis of plaintiff's action. Mr. Cotton testified further that his conversation with Mr. Goethals on November 27, 1936, lasted about one hour and a half. During this time the situation was discussed, including the terms of the sale of coke to plaintiff. At that time an oral agreement was made to the effect that in case defendant should sell the coke to a third party plaintiff would be paid a sum not less than $1 for each ton so sold. During this conversation Mr. Goethals left the room temporarily and dictated a letter which he placed in a sealed envelope and handed to plaintiff. Plaintiff did not read or sign this letter and did not open it until the fall of the following year. The letter was the one previously referred to as exhibit A. During the succeeding months plaintiff screened and sacked the coke and prepared it for market. He made contracts with the various citrus growers, secured their orders and purchased coke from defendant.

After hearing Mr. Cotton's testimony the trial court sustained defendant's objection to questions concerning the oral agreement and struck out the evidence on the subject on the ground, as stated by the court, that defendant was attempting to vary the terms of a written agreement. The jury was recalled and directed to return a verdict for defendant.

The letter introduced as exhibit A was merely an offer to sell coke and did not purport to constitute an agreement until acted upon by plaintiff and then only for the individual orders of coke purchased by plaintiff. It did not purport to relate to or provide for any contingencies in case of the sale of coke by defendant to third parties. In *Gardiner* v. *Burket*, 3 Cal. App. (2d) 666 [40 Pac. (2d) 279], this court stated the rule which governs in situations like the present: "Evidence of a contemporaneous oral collateral

contract is admissible as long as the collateral contract does not conflict with the terms of the written contract, and covers a matter distinct from even though closely related to the express subject-matter of the written instrument and is not embodied therein.'' The court cited numerous authorities in support of the rule as stated. In *Greathouse* v. *Daleno*, 57 Cal. App. 187 [206 Pac. 1019], the court referred to the general rule that where a contract in writing is complete in all its terms parol evidence to vary those terms may not be admitted and stated: ''A well-understood concurrent rule is, that where the parol evidence which is offered is entirely consistent with and in no way changes or contradicts the written instrument, such parol evidence may be admitted.'' (See, also, *Lindsay* v. *Mack*, 5 Cal. App. (2d) 491 [43 Pac. (2d) 350].)

We are satisfied that the evidence offered should have been received by the court. Plaintiff did not rely upon the letter exhibit A either in his pleadings or in his proof. The contemporaneous oral agreement had been in effect for a number of years before the writing of the letter, and according to plaintiff's testimony was in effect after the letter was written. The oral agreement, if there were such agreement, merely continued in force the practice which had previously been the practice between the parties. The letter referred only to sales made direct by defendant to plaintiff whereas the oral agreement referred to sales made by defendant to third parties. Although the two matters are closely related there is no conflict between the terms of the oral agreement and the terms of the letter, which covered a matter distinct from the matter covered by the oral agreement. The considerations for the two agreements are distinct, the consideration for the letter being the payment of a certain sum to defendant upon the purchase of coke by plaintiff and the consideration for the oral agreement being plaintiff's services in advertising, handling and marketing the coke.

The judgment is reversed.

Crail, P. J., concurred.

McComb, J., dissented.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1939. Shenk, J., voted for a hearing.