## SICKELCO v. UNION PAC. R. CO. et al.

### No. 9375.

Circuit Court of Appeals, Ninth Circuit.

May 3, 1940.

Rehearing Denied June 5, 1940.

Porter C. Blackburn, of Los Angeles, Cal., for appellant.

E. E. Bennett, Edward C. Renwick, and Malcolm Davis, all of Los Angeles, Cal., for appellees.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from a judgment rendered after a directed verdict in favor of defendants. Jurisdiction of the federal courts is based on diversity of citizenship. The jurisdictional sum of money is involved. For convenience we will refer to the appellant and appellees as plaintiff and defendants respectively.

For many years plaintiff was employed by the defendant Los Angeles & Salt Lake Railroad Company, and later by the defendant Union Pacific Railroad Company, in the capacity of "mechanical supervisor". The defendant Los Angeles & Salt Lake Railroad Company leased its properties to the defendant Union Pacific Railroad Company, and the Union Pacific Railroad Company agreed to "liquidate the current and deferred assets and liabilities of" the Los Angeles & Salt Lake Railroad Company, and "defend or settle all claims, demands and suits growing out of the operations and business of the" Los Angeles & Salt Lake Railroad Company "prior to the effective date" thereof. Plaintiff seeks to recover from the defendant companies full salary for periods from March 30, 1932 to June 21, 1932 and from August 26, 1932 to February 26, 1936, totaling over three years, during which he was laid off on account of illness and injuries. Five causes of action were pleaded, but during the course of the trial, counsel for plaintiff conceded that no evidence had been presented from which the court could properly submit the second and fifth causes of action to the jury. We therefore confine our discussion to the first, third and fourth causes of action.

In his first cause of action plaintiff based his claimed right to recover the salary for the periods above mentioned on an alleged custom or usage of the defendant companies to pay their employees their full salary during periods of incapacity. Plaintiff cites cases in support of this cause of action which hold that parties who contract on a subject matter concerning which known usages prevail, by implication incorporate them into their agreement if nothing is said to the contrary. It is plaintiff's contention that he introduced evidence fairly tending to prove a custom or usage, and that the question of whether or not there was such a custom should have been presented to the jury.

Plaintiff's third cause of action sets up an alleged contract to make such payment of compensation during disability to members of Mechanical Supervisors' Association, of which plaintiff was a member. In support of this cause of action plaintiff introduced

in evidence a written agreement between his employers and the Mechanical Supervisors' Association, dated May 1, 1926. There is no mention in this agreement as to payment for services except for the following:

"Article IV—Basis of Payment:

"(a) All foremen will be paid a monthly salary for all services rendered. Present classifications and salaries being so designed will remain in effect until or unless changed in accordance with the provisions of this agreement."

Plaintiff's theory in connection with this cause of action is not clear. He at one time argues that the above quoted provision is ambiguous and therefore should be interpreted against the author of the agreement. It is shown by the evidence that the agreement was prepared by attorneys for the plaintiff's employers. He next argues that the agreement should be given the practical application given to it by the defendants themselves, and in support of this argument evidence was introduced which plaintiff claims shows that the company was in the habit of paying its foremen for time off while sick. He next argues that there had been a long existing oral understanding between the parties which was expressly adopted into the written agreement by the above quoted provision; and then the argument is presented that even though there might not have been an express incorporation of the oral understanding into the written agreement, still it would be proper for the plaintiff to prove the oral agreement, since there would be no conflict between the terms of the oral agreement and the written agreement, notwithstanding the fact that it might be closely related to the subject matter of the written instrument.

Plaintiff's fourth cause of action is based upon quantum meruit. His contention here can best be understood from a quotation from his opening brief: "The plaintiff does not contend that he actually performed his duties for the time he is claiming salary. * * * he is nevertheless entitled to recovery under the quantum meruit rule for the period of time that plaintiff was kept on the suspension list and contrary to his wish and under circumstances which he believed to be entirely unnecessary and uncalled for."

He points to evidence in the record to the effect that he was regarded by the defendants as an "employee" during the periods of time in question, the company allowing him to retain his seniority on its rolls, and issuing him transportation passes to which only an "employee" was eligible.

Defendants denied the existence of any custom or usage as alleged by plaintiff, the existence of the contract referred to in plaintiff's third cause of action, and that plaintiff had rendered any services during the periods in question. As affirmative defenses to each cause of action defendants set up the statute of limitations and accord and satisfaction.

We shall discuss the three causes of action separately.

With reference to the usage and custom which plaintiff sought to prove in support of his first cause of action, we quote from plaintiff's opening brief: "It is appellant's contention that it appears affirmatively from the evidence in the case at bar that there was a uniform practice or custom existing between the defendants and their foremen whereby foremen were entitled to their pay for time off occasioned by sickness or injury arising in the course of employment."

At the outset it should be noted that the evidence upon which plaintiff relies is all directed to proving that the defendants were in the habit of compensating their employees for time off on account of disability. No attempt was made to show that it was the custom of railroads in general, nor that there was any custom whatsoever except as between the parties in question. We express no opinion as to whether or not this sort of custom or usage, if proved, would fall within the rule that parties who contract on a subject matter concerning which known usages prevail by implication incorporate them into their agreements, if nothing is said to the contrary. It is our opinion and we hold that the plaintiff failed to prove a custom or usage, even as between the defendants and their employees.

We think the general doctrine is well put in 17 Corpus Juris, 451, Customs and Usages, Sec. 10, " * * * a usage or custom of trade must be certain and uniform in order to be binding. It is not sufficient that it is merely as certain as the nature of the business to which it applies will permit. Further, a loose and variable practice will not be allowed to control the rights of the parties, nor will an alleged usage which leaves some material element to the discretion of the individual."

And in the same volume of Corpus Juris, 453, Customs and Usages, Sec. 11, "A custom must be compulsory, and not left to each one's option to obey it. Likewise, a usage, in order to be regarded as entering into a contract, must be clearly distinguished from mere acts of courtesy or accommodation."

This action was instituted originally in the California Superior Court; the contract set up by the plaintiff is alleged to have been entered into in California. We therefore look to the California law to determine what sort of custom or usage will control the rights of the parties. We find that the California courts recognize the requirements as to certainty and uniformity to establish a custom or usage. See Security Commercial & Savings Bank v. Southern Trust & Commerce Bank, 74 Cal. App. 734, 241 P. 945 [hearing denied Sup. Ct.].

Turning now to the evidence by which the plaintiff sought to prove the custom or usage, plaintiff testified that he was absent from duty prior to March 30, 1932, approximately fifteen times on account of sickness or injury or for other personal reasons, for periods varying from two to ten days each. He testified that on each occasion an allowance of full pay was granted by his employers. It does not appear from the record how many of these absences occurred prior to the date the contract between the defendants and the Mechanical Supervisors' Association was entered into.

The deposition of E. J. Conners, assistant to the president of defendant Union Pacific Railroad Company, was introduced into evidence by plaintiff in an attempt to establish other instances where allowance was made to mechanical supervisors who were absent from duty on account of sickness or injury. This deposition discloses six instances where mechanical supervisors were absent on account of sickness or injury. One of such employees was absent for three days, on account of an injured back. He was paid full salary for that period. The second instance disclosed that the employee was absent approximately two months. He was paid half time. The third employee was absent approximately eight months. His normal salary for the period of absence would have amounted to $1,087.-72. His allowance for salary was $750. The fourth employee was absent about six weeks. His salary would have been $321.-51. He was allowed and paid $200. Another employee was absent approximately a month. No allowance was made or paid. The sixth instance disclosed by said deposition was of an employee who was absent approximately five weeks. He was paid full salary during that time. Three other instances in which employees were absent on account of injury or illness were brought out in the testimony. Two of these employees received half pay during their absence. As to the third employee, the record does not disclose what his normal salary would have been, the evidence being that he was allowed $556.55 for approximately two months absence. All but one of the absences occurred subsequent to the contract between the defendants and the Mechanical Supervisors' Association. It should also be noted that the longest period of absence testified to was eight months. Plaintiff is claiming salary for some three years absence.

E. P. Pickles, former shop superintendent of the defendant Union Pacific Railroad Company, was called by plaintiff in an attempt to prove the custom or usage. Mr. Pickles testified that during his employ as such superintendent he recommended allowances for employees who were laid off on account of illness or injury, and that after his recommendation the matter went to two other officials of the company for their recommendation. He then testified on cross examination:

"Q. If any of the three of you decided against recommending it, the man wouldn't be paid, would he? A. No, not without considerable discussion, he wouldn't.

"Q. It was not obligatory that he be paid; it was a matter of discretion on the part of each one of you whether he should be paid or not, wasn't it really? A. Yes."

No testimony was introduced to rebut this statement.

This evidence, taken at its full possible value, could not support a finding of a uniform custom or usage to pay mechanical supervisors their full pay for periods of incapacity, regardless of the length of the period, as contended for by the plaintiff. We therefore hold that the trial court committed no error in directing a verdict as to plaintiff's first cause of action.

In support of his third cause of action plaintiff attempts by parol evidence to show that the provision of the written agreement above quoted was understood by the parties to cover an agreement to pay employees full time while incapacitated. Evidence

was introduced to the effect that various officials of the defendant companies had made such statements as "If a man was off sick or injured he was entitled to his salary"; "It was his understanding that they were going to pay him"; and "You were entitled to that according to the agreement. We pay our foremen when they are off for sickness." The argument of plaintiff is that the written contract is "ambiguous, uncertain, indefinite, obscure, equivocal and not clear", and that it should be given the practical application given it by the defendants themselves.

 The fallacy of plaintiff's argument, however, lies in the fact that there is no ambiguity whatsoever on the face of the contract. No mention is made as to any pay for time off on account of injury or sickness. Since there was no ambiguity in the contract, the plaintiff cannot be permitted by parol evidence to place in evidence his understanding of the terms thereof. Furthermore, by plaintiff's own testimony it is clear that all parties recognized the fact that the agreement did not cover the point.

Plaintiff next argues that there was an oral agreement to pay salary during incapacity. We quote from his brief, "There was a contract, either written or oral. We take it that it is unimportant whether or not plaintiff is pressing his claim on a contract resting on parol or whether he is pursuing his claim under a written contract which adopted a well recognized oral understanding between the parties."

It is plaintiff's contention here that if the written contract was intended not to cover the subject of pay for employees during incapacity, "evidence of a contemporaneous collateral contract would be admissible as long as the collateral contract does not conflict with the terms of the written contract and covers a matter distinct from even though closely related to the express subject matter of the written instrument and is not embodied therein".

 We agree with plaintiff's statement of the law that evidence of such a collateral agreement would be admissible [Cotton v. Riverside Cement Co., 29 Cal. App.2d 588, 85 P.2d 136, hearing in Supreme Court denied Feb. 6, 1939] but the difficulty with plaintiff's position lies in the fact that there was no evidence of such collateral agreement to properly submit to the jury. The evidence relied upon by plaintiff is the same as that briefly outlined above in our discussion of his contention that there was proved a custom or usage, and it is clear from that evidence that the question of whether or not an employee would be allowed pay during incapacity and for how long such pay would continue depended entirely on the discretion of the defendants. It further appears from the evidence presented by the plaintiff that instead of there being an agreement as to pay during incapacity, the defendants consistently refused to make any definite agreement on the subject.

The trial court was correct in directing a verdict for the defendants on the third cause of action.

 We come now to the fourth cause of action, which is based upon quantum meruit. Plaintiff's argument here is to the effect that he made some 260 visits to various officials of the defendant companies, for which he should be compensated. An examination of the evidence, however, discloses that those visits were made by the plaintiff in his own behalf, either for medical examinations and treatment, or to look for work. Plaintiff further argues that the defendant companies prevented him from accepting other employment. There is no evidence to this effect. The evidence does disclose that the plaintiff desired to preserve his seniority rights, which would have been lost by his accepting other employment. The evidence to the effect that the defendants continued the plaintiff on its seniority rolls in order to preserve his rights should he ever become able to return to work, and granted him privileges to which only an "employee" was entitled, certainly lends no basis to plaintiff's claim that he should be paid for his time during which he performed no services for the defendants. The basis for a recovery quantum meruit is unjust enrichment—that it would not be just for one person to receive a benefit by reason of the labors of another without being compelled to give reasonable compensation therefor. There could be no recovery on a quantum meruit count for services that were not rendered. There was no error in directing a verdict on this count.

 Plaintiff also assigns as error the exclusion of certain evidence which he claims further tended to prove the existence of the contract and the claimed usage and custom. He first complains about the court's refusal to admit a letter from one

of the officials of defendant company to another of defendant's officials. We quote from plaintiff's brief with reference to the offered letter: "This letter had the effect of showing the attitude of the defendants toward the plaintiff's conduct in pressing his claim for restoration to the service, and as to the good faith of the defendants in assuring the plaintiff that they were making some effort to find out his actual physical condition."

We are not furnished with a copy of the letter, but from the above statement of its contents we hold that the same was properly excluded. It could have no possible bearing on any issue of this case.

Plaintiff also assigns as error the striking out of certain testimony of Mr. Pickles as to a conversation between officials of the company and representatives of the Mechanical Supervisors' Association. We have read the stricken testimony, and hold that the plaintiff was not prejudiced by its exclusion.

In the view that we have taken of the case, that the plaintiff has failed to prove any cause of action as against the defendants, it is unnecessary for us to consider the affirmative defenses of the statute of limitations and accord and satisfaction set up by the defendants.

The decision of the district court is affirmed.