[Civ. No. 13452.   Second Dist., Div. Two.   June 9, 1942.]

LACY MANUFACTURING COMPANY (a Corporation), Respondent, v. GOLD CROWN MINING CO., LTD. (a Corporation), Appellant.

Lester V. Peterman for Appellant.

James P. Fitzpatrick and Clyde F. Murphy for Respondent.

MOORE, P. J.—Plaintiff instituted this action to recover the balance due upon a contract and for extra labor performed and materials used in the dismantling, removal, and reconstruction of a mining mill and equipment for defendant which operated certain mining properties in San Bernardino County. The controversy revolves primarily about the extra charges.

In early September, 1938, the officers of the two corporations negotiated with a view to contracting for the removal of defendant's milling plant from location K to a new location some six miles distant, hereafter referred to as location Y. The removal could be made only over a desert road not exceeding 18 feet in width through hills and woodlands. The mass of the equipment to be removed to Y is as follows:

A Hardinge Ball Mill, weight about 30,000 pounds,

1-280 horsepower Fairbanks and Diesel engine, weight about 32,175 pounds,

1-Dorr Classifier, weight about 4,500 pounds,

1-Dorr Thickener.

The Thickener was the important item in the list of articles to be removed. The reason for the omission of its weight from the above list will appear as we proceed. It is a cylindrical-shaped unit, 30 feet in diameter and 30 feet in height. Its exterior was a steel shell 5/16 of an inch in thickness in its lower 10 feet and 1/4 of an inch thick in its upper 20 feet. Within the shell is a large tank near the top, below which are four steel trays horizontally placed across the

entire width of the interior. Through the center of the tank and trays extends a vertical revolving shaft to which are attached rakes which stir the material to a thick consistency as it descends through the tank and several trays. In order to move and reconstruct the Thickener, it was necessary to dismantle it by cutting the shell and trays with an acetylene torch into sections, removing the rakes from the vertical shaft and by withdrawing the shaft itself. After transporting the mill from location K to location Y, it was necessary to bottom the tank upon new foundations; to reassemble the rakes to their accustomed places on the shaft and to re-establish the tank, trays, and shell by welding them into their original forms.

To effect such removal and reconstruction, defendant procured plans and specifications to be prepared by the Southwest Engineering Company, of which blue prints were made, one set of which was delivered to plaintiff in the early part of September, 1938, with a request for a bid for removal and reconstruction of the plant. A modified bid was submitted in writing by plaintiff September 30. It was accepted by defendant on the 10th day of October. The total basic amount of the contract was $9,587 plus the amount of sales taxes on parts supplied. The work to be done, as described in the contract, consisted of 15 items. Inasmuch as the controversy involves only items 14 and 15, those parts of the contract, not in issue, are omitted.

The substance of the agreement was that plaintiff should furnish the items ''as specifically outlined below and in full accordance with the Southwest Engineering Company's drawings referred to; all equipment to be delivered to plant site in the Dale District, near 29 Palms, California.''

Each item, after describing the materials to be furnished and the labor to be performed in removal and reconstruction, closes with the price and the amount of the sales tax. Items 14 and 15 as they appear in the contract are as follows:

''ITEM 14: Moving of one Dorr 5-compartment Thickener 30'0'' diameter x 30'0'' high, from the old mill site to new mill site including: removal of stirring apparatus, beam supports and all piping immediately supported by tank. Cut down of tank and trays in sections permitting hauling over normal road widths. Hauling of all of above to new mill site. Reassembly of tank, trays, apparatus and above mentioned piping on foundations to be prepared by Purchaser. Leveling

and adjustment that may be required to put tank back into its present operating condition. PRICE: complete, as listed above. $2,800.00. No California Sales Tax on this item.

"NOTE: This figure is based on an estimated total weight of 42½ tons. We agree, upon reassembling this unit, to make a slight change in location of over-flow box and tray center overflows, and to substitute new shoes to be furnished by purchaser, with the understanding that this work does not involve the furnishing of any new material and that the changes will not interfere with the normal procedure of our work.

"ITEM 15: Moving from present foundations at the old mill site to foundations to be prepared by purchaser at new mill site:

"1-Diesel Engine, weighing approx. 32,175 pounds.

"1-Hardinge 6x22 Ball Mill, with or without liners weighing not over 30,000 pounds

"1-Classifier, 20′ long x 4′ wide, weighing approx. 4,500 pounds

| | |
|---|---|
| PRICE: For complete handling of three units | $ 340.00 |
| Total Price: For 15 items | 9,587.00 |
| Total California Sales Tax | 143.63" |

Other covenants of the writing are: that plaintiff agrees "to complete delivery and installation of all items as listed above within 30 working days from date of contract";

TERMS:

"On the first day of each calendar month, sixty-five per cent (65%) of the price of all materials shipped and of all labor expended during the preceding month shall be invoiced for payment within 10 days after date of invoice. Balance of contract price shall be invoiced for payment forty-five (45) days after completion of contract."

Upon the trial two factual conflicts developed: (1) whether defendant exhibited the blue print showing the changes to be made in the Thickener before the execution of the contract; (2) whether the contract price for item 14 was reduced by plaintiff from its original bid of $3,200 to the sum of $2,800 by reason of statements made by the president of defendant to the effect that the Thickener did not weigh 61 tons but only weighed 42½ tons. The fabrication of the items was commenced by plaintiff immediately upon the execution of the contract by reason of untreated ore in its bins at location K. Defendant agreed to commence the removal on the

10th day of November. On the later date workmen appeared at location K and began the work of dismantling. Because of a water shortage the operations were closed down for some days. On the 21st day of January defendant accepted the plant as reconstructed at Y. Other facts material to the controversy will appear in the recitals that follow but suffice it to say here that, after service of a statement of the full amount due only the sum of $6,361.80 was paid prior to the impasse that subsequently developed because of which plaintiff instituted this action.

Its complaint contained four counts, namely: (1) for the balance due on the basic charges in the sum of $3,368.83; (2) for the value of the extra services performed and materials furnished in the sum of $1,048.92; (3) for interest on the unpaid balances in the sum of $608.30; (4) upon an account stated in the sum of $5,026.05.

At the trial the court found the facts as contended by plaintiff and entered judgment thereon in its favor in the sum of $5,281.82.

A number of grounds for reversal are assigned by defendant, each of which will be discussed in its turn.

▮ (1) Defendant assigns as prejudicial error the action of the court in rejecting evidence in support of the cross-complaint. The cross-complaint undertook to state a cause of action for damages resulting from the alleged delay in the completion of the contract. Its claim is that it required 102 working days whereas the contract provided that the job should be done in 30 working days and that during the extra 72 days it was unable to operate its mine and mill to its damage in the sum of $4,200. While the contract provides for the delivery and installation of the plant within 30 working days, other provisions of the contract show that the parties contemplated that the entire work would require months for its completion. The payments to be made by defendant were to be made on the first day of each calendar month and were to include 65 per cent of the price of all materials used and all labor employed during the preceding month and that defendants should be invoiced for payment forty-five days after the completion of the contract. In view of such terms, the trial court properly found that it was within the contemplation of both parties that the moving of the equipment and changes to be made were not to be restricted to 30 working days. That period was not specified as the time within

which all the work contemplated by the parties was to be completed. But aside from the difficulties encountered by reason of the terms of the contract itself, there is not a sufficient showing of certain and immediate damage suffered; no factual statement of any ore blocked out; not even a statement that the structure below the surface of the earth was gold-producing or that any amount of ore could be mined and reduced within a specified time; no statement of the cost of mining and milling or of royalties to be paid. In short there is nothing to indicate the profits available to defendant during the 72 days in question. In the absence of these and allegations of the costs of labor, of the depreciation of the milling plant, of the cost of power and water; of royalties to be paid; of the amount of ore that could be mined and milled during the period in question, there was nothing in the cross-complaint to aid the court in trying the question of profits lost. Recoverable damages for any breach are only those which were reasonably in the contemplation of the parties at the time of entering into the agreement. (*Johnson v. Levy*, 3 Cal. App. 591 [86 Pac. 810]; *California Press Mfg. Co. v. Stafford Packing Co.*, 192 Cal. 479 [221 Pac. 345, 32 A. L. R. 114].)

Moreover, the mining business of defendant had not been established at the new location; nothing was known of any of the items necessary to make adequate proof. Loss of profits resulting to a new business is too uncertain to constitute the basis for computation of damages resulting by reason of a breach of contract. The profits of such an adventure existed only in the fond dreams of the adventurer and not in figures entered upon the books of record kept by an established business. In the absence of provable data, taken from the operations of a business in the past, it cannot be assumed that anticipated profits will be realized. *California Press Mfg. Co. v. Stafford Packing Co., supra*. The order of the court excluding evidence under the cross-complaint was justified on the basis of the contents of that pleading. The court exercised a sound discretion in refusing the defendant's request to amend.

(2) It is contended that the evidence is not sufficient to support the finding of an account stated. The evidence received upon that score contains no inherent improbability. It is found in the testimony of responsible witnesses who testified on behalf of both plaintiff and defendant. On

February 21, 1939, Mr. Schindler, president of plaintiff, made up 39 invoices covering both basic charges and extra charges and delivered them at the office of Mr. Novell, the president of defendant. Three days later Novell stated to Schindler that the invoices were "all right." Such invoices were never again discussed although the men met many times thereafter. Neither was there ever repudiation of any charge made in any invoice. On the 10th of March plaintiff forwarded a statement of the account for the sum of $10,606.37 for all charges then unpaid, including all extras. On March 21, defendant forwarded to plaintiff a check in the sum of $1,859.10 for specific items mentioned in the statement of March 10th. The letter accompanying that check contained no objections to any items mentioned in the statement, but on the contrary it stated that the defendant was then arranging for additional money for plaintiff. On the 18th of April, 1939, plaintiff forwarded a new statement demanding $8,341.16 and in the accompanying letter reproved defendant for its delays in meeting its payments. No written reply was made to that demand. In both statements of March 10 and April 18, all charges for extra labor and materials were included in the total amount claimed to be due. No objections in writing were made to the statement of April 18th. On May 31, 1939, defendant forwarded its check for $355.90, accompanied by a letter in which Mr. Novell stated that he was still unable to raise additional money and that as quick "as I put it over, I will forward it to you." On the same day plaintiff forwarded to defendant its invoice for interest in the sum of $136.70 on the unpaid balance of the account from March 7th. Thereafter at the end of each of fourteen successive months plaintiff forwarded invoices for the accrued interest on the unpaid account for the preceding 30-day period. Notwithstanding its receipt of such invoice and the numerous letters from defendant to plaintiff, not a lisp was uttered or a syllable written in protest or objection to any balance demanded or to any item included in the account. Thereafter, on August 9, 1939, defendant by letter offered to pay $1,000 per week to plaintiff "until your account is liquidated in full" and agreed to increase the interest rate from 6 per cent theretofore charged to 7 per cent. Six days later defendant forwarded its check in the sum of $250 with a promise to make up the "difference." One week later defendant asked the privilege of discharging its debt by paying

$1,000 every other week. Still only one week later defendant wrote that it was trying to bring its agreement up to date on the next Wednesday. By November 14th the account had, by the few payments made, been reduced to the sum of $6,042.68, which included all charges, both basic and extra as well as interest.

From the time of the delivery of the 39 invoices to defendant, February 21 to December 30, 1939, 10 months and 9 days elapsed. From the time of the first statement indicating the amount of the contract due on March 10, 1939, to December 30th, a period of 9 months and 20 days elapsed. Silence of a debtor for either period during which he received constant reminders of the amount of his indebtedness was sufficient to create an account stated.

If other proof were required it is found in the care which was exercised by defendant in the deliberations preliminary to the contract and which is evidenced by all of the correspondence of defendant in forwarding checks and excusing delays. The exercise of such care is convincing proof that the defendant would have protested vehemently had it been dissatisfied with any charge which it might have deemed to be unjust. Thus, by the lapse of time and the constant reminder of its debt, the defendant, by its own conduct towards the invoices, statements and letters from plaintiff, and by its payments to plaintiff prior to November 14, 1939, acknowledged that an account had become stated. On December 30, 1939, when an inquiry was made concerning a discrepancy between the books of defendant and those of plaintiff, was the first occasion on which Mr. Novell stated that he would not pay the sum of $1,410.91.

But aside from the acquiescence of defendant, the account was established by its positive acceptance. Secretary Stevenson testified that on May 3, 1940, Novell stated that the items of the account as rendered and of the invoices and statements were correct. The trial court believed the testimony of Messrs. Stevenson and Schindler, as indicated by findings V and VI, that on February 19, 1940, and again on May 3, 1940, defendant retracted its objections of December 30 to the item of $1,410.91 of the account and agreed on both occasions that the item of $1,410.91 was just, reasonable and proper. To emphasize the importance of the agreement of defendant on May 3, 1940, that the account was correct, three additional statements of accrued interest were sent to de-

fendant after December 30, 1939, to none of which was objection made.

An account stated is a writing which exhibits the indebtedness due from one party to the other which, if assented to, either expressly or impliedly, becomes a new contract. (*Wright* v. *Strobeck*, 139 Cal. App. 552 [34 P. (2d) 781]; *Mayberry* v. *Cook*, 121 Cal. 588 [54 Pac. 95]; *Hendy* v. *March*, 75 Cal. 566 [17 Pac. 702].)

As to what is a reasonable time which should elapse from the time of the service of the account on the debtor in order to create an account stated, in the absence of a positive declaration of acquiescence, is one of law for the court. It has been held that a delay of six months in repudiating the agreement is as a matter of law unreasonable and that, because of it, acquiescence will be presumed and that an account stated is thereby created. (*Cusick* v. *Boyne*, 1 Cal. App. 643 [82 Pac. 985]; *Hendy* v. *March, supra; Standard Oil Co.* v. *Van Etten*, 107 U. S. 325 [1 S. Ct. 178, 27 L. Ed. 319].) The plaintiff having kept books in the conduct of its business, the preparation of a statement of its account with defendant, its delivery of such statement and the agreement that the statement was correct, furnish all of the essentials to complete an account stated.

(3) Defendant contends that inasmuch as the contract for transporting and reconstructing the plant was in writing, it cannot be altered by an oral statement of the account as in violation of section 1698 of the Civil Code. There was no attempt to vary the terms of the contract. Item 14 obligated plaintiff to move and reconstruct the Thickener at Y for $2,800. The very presence in item 14 of the note to the effect that the price fixed in the agreement was based upon an estimated total weight of forty-two and one-half tons indicates that it was the intention of the parties that extra compensation should be allowed for any material excess in the weight of the Thickener. After the completion of the contract the agreement to pay an additional $400 on account of the extra 20 tons in the Thickener was an independent, collateral contract and in no way alters or varies the written contract of the parties. Parol evidence is properly admissible to prove such parol agreement. (2 Nichols Applied Evidence, vol. 2, p. 1263, par. 67; *Mackin* v. *Darrow Music Co.*, 69 Okla. 1 [169 Pac. 497].) It is a well understood concur-

rent rule that where parol evidence is entirely consistent with and in no way changes or contradicts the written contract, it should be admitted. (*Greathouse* v. *Daleno*, 57 Cal. App. 187 [206 Pac. 1019].) The rule that a writing supersedes all contemporaneous oral negotiations has no application to an independent contract arising out of matters provided for in the written agreement. (*Cotton* v. *Riverside Cement Co.*, 29 Cal. App. (2d) 588, 592 [85 P. (2d) 136]; *Lindsay* v. *Mack*, 5 Cal. App. (2d) 491 [43 P. (2d) 350].) ▮ The extra work performed by plaintiff was not a "slight change." It required a substantial outlay of labor and material. In all 207 hours of extra work were required for the removal and reconstruction of an additional 20 tons of weight of the cylindrical plant. There was nothing in the testimony making proof of the extras furnished contradictory of any provision of the primary contract. The oral agreements of the parties on February 21, 1939, and on May 3, 1940, were consistent with all provisions of the written agreement. Moreover, at the times of the promises of defendant to make the payment of the sums charged for extras, the work had been performed and accepted by defendant. This fact alone disposes of the parol evidence rule which, itself, provides for parol proof of an executed oral agreement. (Civ. Code, § 1698; *Klein-Norton Co.* v. *Cohen*, 107 Cal. App. 325 [290 Pac. 613]; *Pearsall* v. *Henry*, 153 Cal. 314 [95 Pac. 154, 159].)

▮ (4) Defendant contends that, in view of the fact that the account contained separate items, there can be no account stated on each separate item. The law is to the contrary. Excepting such items as the debtor may designate to be objectionable to him, all others are admitted to be correct, and the account becomes stated as to them. (*Tuggle* v. *Minor*, 76 Cal. 96 [18 Pac. 131].) If one item is objected to, it is an admission of the rest to which no objection is made. (*Terry* v. *Sickles*, 13 Cal. 427.)

▮ (5) Defendant contends that inasmuch as it held a counterclaim against plaintiff, the latter's demand is deemed unliquidated and can therefore bear no interest. It is claimed that before payment was due under the contract the amount became in dispute. But when the 39 invoices were presented to defendant on February 21, 1939, 14 days before payment was due, the president of defendant stated that all the charges were right. Also, when on the 10th of March, 1939, a state-

ment containing all basic and extra charges was received by defendant, no objection was made. In fact the only dissent to the account ever uttered at any time was that of December 30, 1939, which was retracted on May 3, 1940. The complaint in this action was not filed until September 13, 1940. We find no record of any claim of a set-off until the filing of the cross-complaint October 11, 1940.

An account stated bears interest from its date. (*De La Cuesta* v. *Montgomery*, 144 Cal. 115 [77 Pac. 887]; *Fee* v. *McPhee Co.*, 31 Cal. App. 295 [160 Pac. 397].) In view of the fact that no objection was made to the account as delivered on March 10, 1939, it bears interest from that date. (Civ. Code, § 3287.) Where the amount of a claim under a contract is certain and liquidated, or is ascertainable or is reduced by reason of the existence of an unliquidated set-off or counterclaim thereto, interest must be allowed on the balance found to be due from the time it became due. (*McCowen* v. *Pew*, 18 Cal. App. 482 [123 Pac. 354]; *Hansen* v. *Covell*, 218 Cal. 622 [24 P. (2d) 772, 89 A. L. R. 670].) The fact that a dispute exists between contracting parties as to charges for extras used in performing the contract does not have the effect of rendering the claim unascertainable by calculation. The debtor can avoid his liability to pay interest by tendering the amount actually due. (*Kammerer* v. *Marino*, 76 Cal. App. 635 [245 Pac. 432].)

(6) Defendant assigns as error the following question asked the secretary of plaintiff while on the stand: "Now Mr. Stevenson, why did you ask that the account be confirmed on April 19, 1940?" The basis of the objection to this question was that it called for a conclusion. The question was improper. (*Powley* v. *Swensen*, 146 Cal. 471, 477 [80 Pac. 722].) It called for the present thoughts of the witness which, in non-expert matters, is not evidence. But the answer was not prejudical. The significance of the question is made clear by the effort of defendant to establish the inference that an account had not yet been stated by the parties prior to the dates of the letters written April 19, June 21, July 5 and July 26, 1940, in which plaintiff asked for a confirmation of the account. The account having become stated sometime prior to April, 1940, in propounding the question counsel sought to have the witness explain those letters which ostensibly were contrary to the fact established by its proof of

an account stated. The facts actually developed were that having learned that the balance of the account as it appeared on the ledger of defendant differed from the balance as shown on plaintiff's books, Mr. Schindler wished his amount confirmed by defendant so that, at any meeting of defendant's creditors, plaintiff would have the advantage of the total amount of its claim. Therefore since the explanation given by the witness in answer to the question was material and relevant evidence no prejudice could have been suffered by defendant. It is the rule that to permit or refuse to permit such questions rests largely in the discretion of the trial judge, whose ruling will not be upset unless it clearly appears that prejudice has been suffered by the complaining party. (10 Cal. Jur. 957.) Since no prejudice was suffered it would be improper to reverse the judgment on that account. (Art. VI, § 4½ Const.)

In view of the fact that plaintiff established an account stated it is unnecessary to discuss the other assignments relating to the claims of defendant (1) that the contract was not performed promptly and efficiently; (2) that there was not substantial proof of the excess tonnage of the plant; (3) that fraud of defendant was not alleged; and (4) that evidence to explain the contract was inadmissible. None of these assignments is meritorious but our reasons for so holding require no expression in view of the account stated.

Judgment affirmed.

McComb, J., concurred.

WOOD (W. J.), J., concurring.—I concur in the judgment. I think that the question asked of the witness Stevenson, set forth in the foregoing opinion, was not improper. (*Hirshfeld* v. *Dana,* 193 Cal. 142, 166 [223 Pac. 451].)